**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KALMAN ROSENFELD, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>AC2T, INC., BONNER ANALYTICAL TESTING CO., and JEREMY HIRSCH.<br><br>       Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kalman Rosenfeld ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants AC2T, Inc. ("Spartan"), Bonner Analytical Testing Co., and Jeremy Hirsch (collectively, "Defendants").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of the Spartan Mosquito Eradicator (the "Product") in the United States.

2. Spartan represents that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control," as shown in the image below:



1

3.      Spartan also represents that the Product "[s]ignificantly decreases population within 15 days," and "[p]rovides up to 95% mosquito control for up to 90 days"[1]:

## ABOUT SPARTAN MOSQUITO ERADICATORS

**What is the Spartan Mosquito Eradicator?**



The Spartan Mosquito Eradicator is a uniquely effective, long-lasting, continuous mosquito control product. Spartan Mosquito Eradicators do not require batteries or electricity, just water!

- Easy to install — Hang along the property perimeter approximately six feet off the ground from a tree branch close to the trunk, within 180 feet of each other.
- Do not require power — Just add warm water and shake.
- Provide continuous, long range protection.
- Minimal maintenance — Maintain water level and replace at least every 90 days.
- Are extremely effective — Significantly decreases population in about 15 days. Provides up to 95% mosquito control for up to 90 days.

4.      Unfortunately for consumers, however, each of these representations is false and misleading.  The Spartan Mosquito Eradicator is a complete scam.  As explained below, the Product is ineffective for mosquito control because it does not kill mosquitoes or decrease mosquito populations.  Worse, Defendants are well-aware that the Product is ineffective yet sell it anyway in pursuit of profit and in clear disregard for public health and safety.

5.      Independent peer-reviewed research recently published in the Journal of the Florida Mosquito Control Association shows that the Spartan Mosquito Eradicator does not live up to the representations on the Product's labeling.[2]  To be sure, Defendants' Product was tested both in a laboratory setting and field study "to evaluate the effectiveness of the commercial

---

[1] https://spartanmosquito.com/mosquito-control/

[2] Aryaprema, et al., *Efficacy of Commercial Attractive Toxic Sugar Bait Station (ATSB) Against Aedes* Albopictus, JOURNAL OF THE FLORIDA MOSQUITO CONTROL ASSOCIATION, Vol. 27, 2020, available at  https://www.researchgate.net/profile/RuiDe_Xue/publication/342562143 _JFMCA672 020/l inks/5efb419f92851c52d609f552/JFMCA672020.pdf#page=86

product in reducing the population densities of *Aedes albopictus*," a common species of mosquito in the United States known to carry disease.

6.      The results of the study were clear.  The study concluded that "[b]oth the laboratory and field components of our study show that the Spartan Mosquito Eradicator is not effective in reducing the abundance of *Ae. Albopictus*."  *Id.* at pp. 4; *see also id.* at pp. 1 ("Neither laboratory nor field components of the study showed significant evidence that the commercial product could reduce the abundance of *Ae. albpopictus* in the natural environment.").

7.      The findings of this study were hardly surprising.  The Product only has three "active" ingredients:  sugar, salt, and yeast.  Consumers are also instructed to add water to the devices.  The devices purport to attract mosquitoes to drink their four-ingredient solution which supposedly kills the mosquitoes before they can breed.

8.      Here is how Spartan explains this process:  "[t]he Spartan mosquito Eradicators contain sugar, salt, and yeast.  When a mosquito ingests the Sodium Chloride (salt), its crystalline structure 'cuts' their stomach, causing it to rupture.  The fermentation process also continues after mosquitoes ingest the mixture, and CO2 production in the mosquito also causes the stomach to rupture."

9.      But if this claim of having solved one of mankind's most vexing problems and greatest health challenges using just sugar, salt, and yeast *sounds* too good be true, that is because it *is*.

10.      Scientists have repeatedly researched whether consuming salt can kill mosquitoes. It cannot.  In fact, once water is added, the Product's salt content is remarkably close to the salt content in human blood – 1% of the Product's solution vs. .9% observed in human blood.  Sadly,

mosquitoes, which regularly feed on human blood in real life, do not experience "cuts" in their stomachs from the salt content.

11.     To the contrary, rather than dying from the salt, mosquitoes' bodies are able to eliminate it.  As a leading textbook explains:  "[w]hen a female takes a blood meal, excess salts (Na+, K+ and Cl-), which are absorbed across the stomach, are rapidly eliminated by Malpighian Tubules/hindgut activity."[3]  In other words, mosquitoes simply urinate the salt out – just like other animals.

12.     That salt cannot kill mosquitoes is further supported by another independent peer-reviewed scientific study conducted by the School of Biological, Environmental, and Earth Sciences at the University of Mississippi, attached hereto as Exhibit A.[4]  The study explains that "several manufacturers … have promoted devices that claim ingestion of salt will significantly reduce populations of wild mosquitoes … there are no known scientific efficacy data that support these claims."  Ex. A, at pp. 2.  To be sure, the study tested the impact of salt ingestion on 9 common species of mosquito:  *Aedes aegypti*, *Aedes albopictus*, *Aedes dorsalis*, *Aedes notoscriptus*, *Aedes vigilax*, *Anopheles quadrimaculatus*, *Culex pipiens*, *Culex quinquefasciatus*, and *Culex tarsalis*.  *Id.*  The study states that "[b]ased on our data and coupled with the fact that mosquitoes have physiological and behavioral adaptations that allow them to avoid or process salt (as found in blood meals), we conclude that there is no scientific foundation for salt-based control methods of mosquitoes."  *Id.*

---

[3] Clements, A. N. 2000. The Biology of Mosquitoes. CABI publishing.

[4] Although the article has passed the peer-review process and has been accepted for publication, it has not yet peen published.  For the ease of the Court and the parties, Plaintiff has attached herewith a copy of the study that has been marked "accepted" by the Journal of Medical Entomology.

13.     The study specifically mentions the Spartan Mosquito Eradicator as a device that claims "salt feeding by adults will reduce mosquito numbers in the wild." *Id.* at pp. 3.  However, the authors note "there are no data that have tested the effectiveness of salt as a substance to kill mosquitoes." *Id.*  For this reason, the authors "tested the effect of salt on survival in nine species of adult mosquitoes" and "hypothesized that low concentrations of salt would not affect adult [mosquito] survival, and we predicted that the addition of salt to a standard sugar diet would not prove to be an effective control mechanism for adult mosquitoes." *Id.* at pp. 3.

14.     The findings of the study were stated as follows:

> Our results from testing the effect of salt on the survival of nine mosquito species of public health importance were clear: <u>there was no evidence from these trials that ingestion of salt had an added lethal effect on adult mosquitoes</u>. Thus, our data support the hypothesis that low concentrations of salt would not affect adult mosquito survival. In seven out of nine of our species we found that mosquitoes that ingested a diet with salt and sugar survived at rates equal to those fed a standard diet of sugar alone.

*Id.* at pp. 9 (emphasis added).

15.     Importantly, the authors also warned that "in many instances state and federal laws do not require efficacy data to support claims made by these devices" and that they "caution that relying on an approach that has no scientific basis," such as Spartan Mosquito Eradicator, "may result in a false sense[] of security for homeowners, which may be dangerous in areas where mosquitoes could potentially be transmitting pathogens." *Id.* at pp. 12.

16.     Here too, the results are clear:  "we conclude that salt is ineffective for the control of mosquito populations by individual consumers, regulatory agencies, or mosquito control districts." *Id.* at pp. 13.

17.     Other research shows that mosquitoes have taste receptors and are capable of detecting a food's salt content.  If a food or liquid is too salty, mosquitoes will not consume it and will not lay eggs there.[5]

18.     Incredibly, a recent published review found that consumption of salt content in mosquitoes causes them to consume *more* blood than they otherwise would have.[6]

19.     Nor is there any truth to Defendants' claim that the combination of sugar and yeast is lethal to mosquitoes.  Wild yeast is ubiquitous in nature and it causes fermentation of rotting (sugary) fruit, which is a preferred food for mosquitoes.[7]  Wild yeasts are also regularly found in nectar, another preferred mosquito food.[8]  Needless to say, these natural mosquito food sources do not cause lethality.

20.     Yeast is not just found throughout nature.  It is also already present in mosquitoes' intestinal microbiota.[9]  Yeast is an important and necessary part of mosquito microbiota, just as sugary objects are a natural food source for mosquitoes.[10]  And as with salt,

---

[5] Christophers, R. 1960. Aedes aegypti. The yellow fever mosquito: Its life history, bionomics and structure. Cambridge University Press

[6] Gonzales, K.K. and I.A. Hansen. 2016. Artificial diets for mosquitoes. International Journal of Environmental Research and Public Health. 13: 1267

[7] Peach, Daniel A. H. and Gerhard Gries.  Mosquito Phytophagy – Sources Exploited, Ecological Function And Evolutionary Transition To Haematophagy.  2019.

[8] Robert N. Schaeffer, et al.  *Consequences of a nectar yeast pollinator preference and performance*.  BRITISH ECOLOGICAL SOCIETY (Sept. 2016).  Available at https://besjournals.onlinelibrary.wiley.com/doi/full/10.1111/1365-2435.12762.

[9] Ryan C. Smith, et al. *The Plasmodium bottleneck*: *malaria parasite losses in the mosquito vector*.  MEM. INST. OSWALDO CRUZ (Aug. 2014).  Available at https://www.scielo.br/scielo.php?pid=S0074-02762014000500644&script=sci_arttext

[10]  Jovana Bozic, et al. *Mosquitoes can harbour yeasts of clinical significance and contribute to their environmental dissemination*. Environmental Microbiology Reports (July 2017). Available at https://www.researchgate.net/publication/318503736_Mosquitoes_can_ harbour_yeasts_of_clinical_significance_and_contribute_to_their_environmental_dissemination/ link/5b0fef854585156fccd7b028/download

yeast and sugar are also found in human blood.[11]  Thus, the suggestion that the combination of yeast and sugar could cause mosquitoes to explode is absurdly misguided.

21.      It is for this reason that the Mosquito Illness Alliance has listed the Product as the first in their list of "Myths/Scams (Products that do not work)."  Its website notes that the Product is "based on a 'yeast trap' design" and its claims of efficacy "have been debunked repeatedly by independent research."[12]

22.       Defendants already know that the Product does not work.  They have repeatedly commissioned efficacy tests which found that their marketing claims were unsupported and that the Product did not work as advertised.  However, they have suppressed publication of these findings using nondisclosure agreements and threats to the scientists involved in this research.

23.      These threats to scientists sounding the alarms on the Product's failure to work as advertised are key to furtherance of Defendants' fraudulent scheme.  Spartan's founder and spokesperson, Jeremy Hirsch, has made personal threats to at least one scientist involved in this research in order to intimidate him out of publicizing the results of his research.

24.       Mr. Hirsch also left menacing communications to Colin Purrington, a biologist that has published results of his own investigation into the Products on the internet.  After leaving a review of his findings of the Product's inefficacy on Amazon, Mr. Hirsch wrote a public response identifying Mr. Purrington's wife's place of employment.

25.      The fraudulent scheme has also been advanced with cooperation from Bonner Analytical Testing Co., which is owned by Christopher Bonner, Spartan's Vice President.

---

[11] Tawidian et al., Mosquito-Fungus Interactions and Antifungal Immunity, Insect Biochemistry and Molecular Biology 111 (2019) 103182.

[12] https://www.mosquitoillnessalliance.org/myths-and-truths

26.    Defendants publish the findings of a purported test of the Product showing

significant efficacy on the label.  They also regularly tout the results of this "test" in the media.



27.    But this "test," which was ran by Bonner Analytical, was scientifically invalid, as

Defendants have been advised.  First, it was not even performed on the correct product.  This test

was conducted on a former iteration of the Product which contained boric acid – an actual poison

capable of killing mosquitoes.

28.    Moreover, the test was (1) conducted without any scientific control and (2) was

conducted in a location and during a period when the local government was already spraying

insecticides meant to kill and reduce mosquito populations.  The fact that Defendants happened

to purportedly observe a reduction in mosquito population was completely meaningless – this

reduction was due to the spraying, not the Product.

29.    Upon information and belief, nobody with scientifically legitimate qualifications

participated in this "testing."  A qualified entomologist was invited to participate.  However, she

declined to do so once she was presented with the nondisclosure agreement Defendants have repeatedly used to silence other scientists.

30.     Defendants have sold tens of millions of dollars' worth of the Product through their false promises of effectiveness to consumers in the United States.

31.     They have done so by capitalizing on health risks posed by mosquitoes to humans.  Defendants' literature has correctly stated that "[t]he mosquito is the deadliest animal in the world."  In this regard, Defendants' scheme is especially malicious in that they know consumers are relying on their worthless Product to protect them from mosquito-borne illnesses.

32.     Plaintiff is a purchaser of Spartan Mosquito Eradicator who asserts claims on behalf of himself and similarly situated purchasers of Spartan Mosquito Eradicator for fraud, violations of the consumer protection laws of New York, unjust enrichment, breach of express warranty and violation of the Magnuson-Moss Warranty Act.

## PARTIES

33.     Plaintiff Kalman Rosenfeld is a citizen of New York who resides in Brooklyn, New York.  In the summer of 2019, Mr. Rosenfeld purchased the Product from a Home Depot store in Brooklyn for approximately $25.  Prior to purchase, Mr. Rosenfeld carefully read the Product's labeling, including the representations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."  Mr. Rosenfeld believed these statements to mean that the Product would effectively eliminate mosquitoes.  Mr. Rosenfeld relied on these representations in that he would not have purchased the Product at all, or would have only been willing to pay a substantially reduced price for the Product, had he known that these representations were false and misleading.  Plaintiff Rosenfeld used the Product according to the Product's directions, but it did not provide effective mosquito control as advertised.

34.     Defendant AC2T, Inc. is a Mississippi corporation with its principal place of business in Laurel, Mississippi.  Defendant AC2T, Inc., manufactures and sells the Product under the Spartan Mosquito brand name.

35.     Defendant Bonner Analytical Testing Co. is a Mississippi corporation with its principal place of business in Hattiesburg, Mississippi.  Upon information and belief, Defendant Bonner Analytical Testing Co. is responsible for conducting and reporting inaccurate test results as to the Product's efficacy.

36.     Defendant Jeremy Hirsch is the President of AC2T, Inc and a resident of Mississippi.  Mr. Hirsch acts as Spartan's spokesperson, regularly promoting the Product on television and other media.  He has also personally participated in the campaign of intimidation and concealment discussed above.

## JURISDICTION AND VENUE

37.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

38.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

39.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendants.

## CLASS REPRESENTATION ALLEGATIONS

40.     Mr. Rosenfeld seeks to represent a class defined as all persons in the United States who purchased the Product (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

41.     Mr. Rosenfeld also seeks to represent a subclass defined as all Class members who purchased the Product in New York (the "New York Subclass").

42.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

43.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of the Product is false and misleading.

44.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing and promotional materials and representations, purchased the Product, and suffered a loss as a result of that purchase.

45.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute

this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

46.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

## Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

47.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendants.

49.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making false representations on the label of the Product.

50.     The foregoing deceptive acts and practices were directed at consumers.

51.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Product to control mosquitoes.

52.     Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Product if they had known that The Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

53.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

54.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

55.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendants.

56.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law because it fundamentally misrepresents the ability of The Product to control mosquitoes.

57.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

58.     These misrepresentations have resulted in consumer injury or harm to the public interest.

59.     As a result of these misrepresentations, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Product

if they had known that the Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

60.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Unjust Enrichment

61.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

63.     Plaintiff and Class members conferred benefits on Defendants by purchasing the Product.

64.     Defendants have knowledge of such benefits.

65.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

66.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV

**Breach of Express Warranty**

67.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

68.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

69.     In connection with the sale of the Product, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

70.     In fact, The Product does not conform to the above-referenced representations because the Product is ineffective for its stated purposes.

71.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased the Product if they had known that the Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

72.     On March 16, 2020, a pre-suit notice letter was sent to Defendants via certified mail that provided notice of Defendants' breach of warranty and demanded that Defendants rectify the breaches of warranty complained of herein.  The letter also stated that if Defendants refused to do so, a class action complaint seeking damages would be filed.  Defendants have failed to comply with the letter.

## COUNT V

### Magnuson-Moss Warranty Act

73.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

74.     Plaintiff brings this case individually and on behalf of the members of the proposed Class against Defendants.

75.     The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

76.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

77.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

78.     In connection with the sale of the Product, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

79.     In fact, The Product is ineffective to control mosquitoes.

80.     By reason of Defendants' breach of warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

81.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' violation because (a) they would not have purchased the Product if they had known that the Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

## COUNT VI

### Fraud

82.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

83.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendants.

84.    As discussed above, Defendant misrepresented that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

85.    The false and misleading representations and omissions were made with knowledge of their falsehood.  As set forth above, Defendants were repeatedly notified that their Product did not work.

86.    The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Product.

87.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

### RELIEF DEMANDED

88.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

      a.    For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.      For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

h.      For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated:  September 30, 2020                    Respectfully submitted,

                                              **BURSOR & FISHER, P.A.**

                                              By:   /s/ *Yitzchak Kopel*
                                                        Yitzchak Kopel


                                              Scott A. Bursor
                                              Yitzchak Kopel
                                              Alec M. Leslie
                                              888 Seventh Avenue
                                              New York, NY 10019
                                              Tel:  (646) 837-7150
                                              Fax: (212) 989-9163
                                              E-Mail:  scott@bursor.com
                                                           ykopel@bursor.com
                                                           aleslie@bursor.com


                                              *Attorneys for Plaintiff*