# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**
**THIRD FLOOR**
**NEW YORK, NY 10019**
**www.bursor.com**

**YITZCHAK KOPEL**
Tel: **646.837.7127**
Fax: **212.989.9163**
**ykopel@bursor.com**

November 11, 2020

*By ECF:*

The Honorable Roslynn R. Mauskopf, U.S.D.J.
Eastern District Of New York
225 Cadman Plaza East, Courtroom 6A
Brooklyn, New York 11201

Re:   *Rosenfeld v. AC2T, Inc. et al.*, **Case No. 1:20-cv-04662-RRM-PK**
      **Response to Bonner Analytical Testing Co.'s Letter Request For A Pre-Motion Conference**

Dear Judge Mauskopf:

I represent Plaintiff Kalman Rosenfeld ("Plaintiff") in the above-referenced action. Pursuant to Rule III.A.2 of this Court's Individual Rules, Plaintiff submits this response letter to Defendant Bonner Analytical Testing Co.'s ("Bonner") Letter Request for a Pre-Motion Conference. ECF No. 12 (the "Letter" or "Ltr.").

## I.   Procedural Background

This putative class action concerns the Spartan Mosquito Eradicator (the "Product"), which is manufactured and distributed by AC2T, Inc., Bonner's co-defendant. Plaintiff alleges that the Product's claim that it will "eradicate your mosquito population" is false and misleading. Complaint ("Compl.") (ECF No. 1) ¶ 2. There are three Defendants in this case – AC2T, Inc., Jeremy Hirsch (AC2T, Inc.'s founder and spokesperson), and Bonner. Mr. Benson, who wrote the Letter, represents only Bonner. The other two Defendants are represented by another law firm. Their deadline to respond to Plaintiff's complaint is December 3, 2020. *See* ECF No. 10. The arguments in Bonner's Letter do not challenge the sufficiency of Plaintiff's allegations against the other Defendants. To the extent that the Court schedules a pre-motion conference, Plaintiff respectfully requests that the Court schedule it for after December 10, 2020, so that all parties have the opportunity to submit any pre-motion letters prior to the Court conference.

## II.   Bonner Is A Conspirator To Fraud And Violations Of New York's Consumer Protection Laws

Bonner's role in this case is as a conspirator. Bonner's Letter correctly notes that it did not manufacture or sell the Product. Rather, Plaintiff alleges that Bonner "advanced" the "fraudulent scheme" by running and publishing knowingly invalid testing of the Product. Compl. ¶ 25-27. The testing "was not even performed on the correct product," but rather on "a former iteration of the Product with contained boric acid – an actual poison capable of killing

mosquitoes." *Id.* ¶ 27. "Moreover, the test was (1) conducted without any scientific control and (2) was conducted in a location and during a period when the local government was already spraying insecticides meant to kill and reduce mosquito populations. The fact that Defendants happened to purportedly observe a reduction in mosquito population was completely meaningless – this reduction was due to the spraying, not the Product." *Id.* ¶ 28. In fact, "nobody with scientifically legitimate qualifications participated in this 'testing.' A qualified entomologist was invited to participate. However, she declined to do so once she was presented with the nondisclosure agreement Defendants have repeatedly used to silence other scientists." *Id.* ¶ 29.

Based on Bonner's Letter, Plaintiff will not pursue his claims for unjust enrichment and breach of express warranty against Bonner. However, Plaintiff's allegations are sufficient to confer personal jurisdiction and adequately state claims for fraud and violation of N.Y. Gen. Bus. L. ("GBL") §§ 349 and 350.

### III.     The Court Has Personal Jurisdiction Over Bonner

According to Defendant, the Court lacks specific jurisdiction because "Plaintiff does not allege that Bonner Analytical did anything at all in New York, much less engage in activity giving rise to any of the claims he asserts." Ltr. at 2. But that is incorrect because the Court has "conspiracy jurisdiction" over Bonner. "[T]he appropriate test for alleging a conspiracy theory of jurisdiction [is]: the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018).

Here, as noted above, Plaintiff alleges that Bonner conspired to dupe consumers into purchasing the Product by conducting a knowingly invalid test, the results of which were published on the Product packaging. Compl. ¶¶ 25-29. This Product was sold to Plaintiff in New York – where the tort occurred. Thus, AC2T's overt acts in furtherance of the conspiracy by distributing the Product for sale in New York was sufficient to confer specific personal jurisdiction its co-conspirators, including Bonner.

### IV.     Plaintiff Sufficiently Pleads His Claims

Plaintiff also sufficiently states claims for fraud and violation of GBL §§ 349 and 350 against Bonner. Defendant argues that "plaintiff fails to allege … that Bonner Analytical engaged in any consumer-oriented conduct or advertising at all, much less consumer-oriented conduct or advertising which was deceptive or misleading." Ltr. at 2. But Plaintiff alleges Bonner knowingly published false testing results for the packaging of the Product that would be sold to consumers. Compl. ¶¶ 25-30.

Defendant also argues that Plaintiff's fraud claim fails because it is not pled with requisite particularity, and "because plaintiff does not allege that Bonner Analytical made any representation to him at all, much less a false representation." Ltr. at 3. That is wrong. Plaintiff's complaint alleges that "[t]he fraudulent scheme has also been advanced with cooperation from Bonner Analytical Testing Co., which is owned by Christopher Bonner, Spartan's Vice President." *Id.* ¶ 25. Bonner knowingly performed fake testing on the Product for purposes of publication to consumers. *Id.* ¶ 27. Nothing more is required. *See Hughes v.*

*Ester C Co.*, 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) ("[P]laintiffs allege that defendants intended to defraud plaintiffs, *i.e.*, consumers. Plaintiffs plead that '[a]t the time [d]efendants made the representations herein alleged, [d]efendants knew the representations were false.' Plaintiffs bolster this claim of alleged falsity awareness b pointing to an alleged lack of supporting scientific evidence for defendants' claims, the study conducted by the Linus Pauling Institute … and the FTC settlements in cases involving similar allegations of fraudulent misrepresentations.").

        Very truly yours,

        Yitzchak Kopel

CC:    All counsel of record (via ECF)