UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                              :

KALMAN ROSENFELD, individually and  :
on behalf of all others similarly situated,  :  No.: 1:20-cv-04662-RRM-PK
                              :

            Plaintiff,          :
                              :

             v.               :
                              :

AC2T, INC., BONNER ANALYTICAL  :
TESTING CO., and JEREMY HIRSCH.  :
                              :

           Defendants.       :
-------------------------------------------------------x

<br/><br/>

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION BY<br/>AC2T, INC. AND JEREMY HIRSCH<br/>TO DISMISS COMPLAINT</u>

<br/><br/>

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY 10020
Tel: (212) 808-5675

*Attorneys for Defendants AC2T, Inc. and
Jeremy Hirsch*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

ALLEGATIONS AND RELEVANT FACTS INCORPORATED BY
REFERENCE IN THE COMPLAINT ................................................................................. 3

I.      The Product ............................................................................................................ 3

II.     Allegations in the Complaint ................................................................................. 4

III.    The Inapposite "Scientific Support" Cited in the Complaint............................... 5

        A.      The Aryaprema Study Disregarded Product Instructions. ...................... 5

        B.      The Other Authorities Cited in the Complaint Do Not
                Concern the Product.................................................................................. 7

IV.     Plaintiff's Allegations Concerning Defendant Hirsch ....................................... 10

APPLICABLE STANDARDS ........................................................................................... 10

        Rule 12(b)(2) ....................................................................................................... 10

        Rule 12(b)(6) ....................................................................................................... 11

ARGUMENT ..................................................................................................................... 12

I.      All Claims Against Defendant Hirsch Should Be Dismissed Under
        Rule 12(b)(2) Because He Is Not Subject to Personal Jurisdiction
        in New York.......................................................................................................... 12

II.     All Claims Should Be Dismissed Under Rule 12(b)(6) Because
        No Facts Are Alleged to Plausibly Support Plaintiff's Claims that
        the Product's Advertising Is False. ..................................................................... 15

        A.      None of the Alleged Scientific Support Refutes the Product's
                Efficacy Claims....................................................................................... 16

        B.      The Complaint's Remaining Allegations Do Not Plausibly
                Plead that the Product's Advertising Is False. ...................................... 21

III.    Additional Grounds for Dismissing Plaintiff's Claims...................................... 23

i

**TABLE OF CONTENTS**
**CONT'D**

**Page**

C.      The Complaint Fails to Allege Any Conduct by Defendant
        Hirsch Caused Plaintiff Harm. ................................................................... 23

D.      Plaintiff Lacks Standing to Seek Injunctive Relief. ............................... 23

CONCLUSION ............................................................................................................... 25

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aloudi v. Intramedic Research Grp., LLC*,
  729 F. App'x 514 (9th Cir. 2017) ..........................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................15

*Atik v. Welch Foods, Inc.*,
  No. 15-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ..................23

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990)............................................................14, 15

*Ballard v. Walker*,
  No. 11-5874, 2013 WL 6501234 (S.D.N.Y. Dec. 11, 2013) ..................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................22

*Boshnack v. Widow Jane Distilleries LLC*,
  No. 19-8812, 2020 WL 3000358 (S.D.N.Y. June 4, 2020) ..................11

*Bowring v. Sapporo U.S.A., Inc.*,
  234 F. Supp. 3d 386 (E.D.N.Y. 2017) ..................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018)....................................................................12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..............................................................................12

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..................................................11

*Eckler v. Wal-Mart Stores, Inc.*,
  No. 12-727, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012)............................ *passim*

*Engel v. Novex Biotech LLC*,
  No. 14–03457, 2015 WL 846777 (N.D. Cal. Feb. 25, 2015) ..................19

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)............................................................11, 23

*Geffner v Coca-Cola Co.*,
   928 F.3d 198 (2d Cir. 2019).................................................................10

*Godoy v. BMW of N. Am., LLC*,
   No. 16-5502, 2018 WL 4608200 (E.D.N.Y. Sept. 25, 2018) .................................10

*Hodges v. Vitamin Shoppe, Inc.*,
   No. 13–3381, 2014 WL 200270 (D. N.J. Jan. 15, 2014) .....................................17

*Hughes v. Ester C Co.*,
   330 F. Supp. 3d 862 (E.D.N.Y. 2018) .....................................................22

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .....................................................21

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
   742 F.3d 42 (2d Cir. 2014).................................................................11

*Kardovich v. Pfizer, Inc.*,
   97 F. Supp. 3d 131 (E.D.N.Y. 2015) .............................................. *passim*

*Kommer v. Bayer Consumer Health*,
   710 Fed. App'x 43 (2d Cir. 2018).........................................................23

*Kwan v. SanMedica Int'l, LLC*,
   No. 14-03287, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015), *aff'd sub nom.*
   *Kwan v. SanMedica Int'l,* 854 F.3d 1088 (9th Cir. 2017) .................................19, 21

*Leger v. Kalitta*,
   No. 16-6545, 2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) ..................................13

*Levin v. Am. Doc. Servs., LLC*,
   No. 17-1285, 2018 WL 2057144 (E.D.N.Y. Jan. 19, 2018)............................12, 13

*Pierce v. Black*,
   No. 97-3037, 1998 WL 461482 (E.D.N.Y. Aug. 6, 1998) ....................................10

*Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*,
   No. 18-3528, 2019 WL 2504039 (E.D.N.Y. June 17, 2019)..................................2, 13, 14, 21

*Sabol v. Bayer Healthcare Pharm., Inc.*,
   439 F. Supp. 3d 131 (S.D.N.Y. 2020).....................................................15, 17

*Shain v. Ellison*,
   356 F.3d 211 (2d Cir. 2004)...............................................................23

*Sharpe v. A&W Concentrate Co.*,
   No. 19-768, 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020) ..................................23

**Page**

*Sidik v. Royal Sovereign Int'l, Inc.*,
    No. 17-7020, 2020 WL 5441306 (E.D.N.Y. Sept. 10, 2020) ...........................................10, 11

*Spector v. Mondelez Int'l, Inc.*,
    No. 15-4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017).............................................16, 17

*Stroud v. Tyson Foods, Inc.*,
    91 F. Supp. 3d 381 (E.D.N.Y. 2015) ...................................................................................12

*Tomasino v. Estee Lauder Cos. Inc.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................................16

*Trisvan v. Heyman*,
    305 F. Supp. 381 (E.D.N.Y. 2018) ......................................................................................13

*Tubbs v. AdvoCare Int'l, LP*,
    No. 17–4454, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017).........................................16, 22

**Statutes**

New York General Business Law §§ 349 and 350 ............................................................................4

**Rules**

Federal Rules of Civil Procedure Rules 12(b)(1), 12(b)(2) and 12(b)(6) ............................ *passim*

N.Y. C.P.L.R. 301...........................................................................................................10, 12

N.Y. C.P.L.R. 302.....................................................................................................10, 12, 13

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants AC2T, Inc. d/b/a Spartan Mosquito ("Spartan") and Jeremy Hirsch ("Hirsch") (together, the "Spartan Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Kalman Rosenfeld's ("Plaintiff") Class Action Complaint filed on September 30, 2020 (the "Complaint"), for lack of personal jurisdiction over Defendant Hirsch and failure to state a claim against any Spartan Defendant.

## PRELIMINARY STATEMENT

Spartan manufactures and sells the Spartan Mosquito Eradicator (the "Product"), a tube-shaped device that consumers can hang in their yards to decrease the mosquito population with respect to certain species common to North America. The Product contains a precise formulation of sugar, salt, and yeast. Its instructions direct consumers how to use the Product, including where it should and should not be placed, and the temperature of water to add. When used as directed, the Product works as advertised.

In essence, Plaintiff claims that the representations on the package are false because, he asserts, the Product does not work. There are no facts alleged to support this assertion, however, and the Complaint thus fails to state any claim upon which Plaintiff could obtain relief.

The Complaint creates the illusion of scientific support for Plaintiff's claims by citing various texts, articles and papers. However, none of the cited materials purports to demonstrate that the Product does not work when used as directed. In fact, only one of the cited sources describes any testing of the Product at all, and that testing disregarded several of the Product's key instructions—such as, where and how to place the Product tubes, the temperature of the water to add to the Product, and how long the Product should be used before seeing results. Particularly egregiously, the "field" test purported to measure results by counting dead

mosquitoes found in the Product tubes—meaningless data because the Product does not purport to trap or kill mosquitoes instantly while they are still in the tubes.  In sum, the only alleged testing cited in the Complaint admits *on its face* that it did not use the Product as directed.  As a result, this alleged testing is immaterial to the core issue of whether the Product lives up to its marketing, and thus does not provide factual support for Plaintiff's claims.

None of the other textbooks and articles cited in the Complaint purport to discredit the Product's assertions about its efficacy in killing mosquitoes.  Most of these sources do not even mention the Product, and none of them purports to address the efficacy of the combination of four ingredients in the Product's device.  Instead, these sources discuss only one—or at most two—of the ingredients in the Product, in isolation.  For example, the Complaint cites alleged testing of a sugar-and-salt solution on nine species of mosquitos, but this purported testing was concluded after only *seven days*.  The Product states that results would be seen within *15 days*.  Further, the test itself reported that by the seventh (and final) day of testing, survival rates were already lower for at least two of the nine species of mosquitoes tested.  These results were observed in less than half the 15-day period that the Product itself specifies it should be used.  If anything, the test tends to confirm that the Product works even faster than advertised.  As another example, the Complaint alleges that two textbooks say certain levels of salinity in water do not kill mosquitoes; however, neither source discusses the salt levels in the Product, let alone how the Product's salt content works in combination with its other ingredients.

 The Complaint's other factual allegations also fail to state a claim.  Plaintiff alleges that the testing behind Spartan's label claims is inadequate.  These allegations are not true; but even if they were, they would demonstrate at most a lack of substantiation behind the Product's advertising statements, not falsity.  Lack of substantiation alone is insufficient as a matter of law

to state a cause of action based on false advertising.  Similarly, Plaintiff's own conclusory assertions that the Product did not work for him do not support his claims.  Without factual allegations showing that the Product does not perform as advertised when used as directed, Plaintiff's claims must be dismissed.

There are also independent reasons to dismiss particular parties and claims in this action.

*First*, Defendant Hirsch is not subject to personal jurisdiction in New York.  Hirsch is a Mississippi resident, and the Complaint does not allege that he has had any contacts with New York State at all, let alone contacts relating to Plaintiff's claims.  The mere allegation that Hirsch is a "spokesman" for Spartan does not subject Hirsch to jurisdiction in New York, as Plaintiff does not allege that Hirsch did anything as "spokesman" to impact Plaintiff's purchasing decision or otherwise cause Plaintiff injury.  All claims against Hirsch should be dismissed under Rules 12(b)(2) and (6).

*Second*, Plaintiff lacks standing to seek injunctive relief because he admits he faces no possibility of future injury, alleging instead that he would not have purchased the Product or would have paid a substantially reduced price had he known of its allegedly false advertising.

Accordingly, as set forth more fully below, the Complaint should be dismissed.

## ALLEGATIONS AND RELEVANT FACTS
## INCORPORATED BY REFERENCE IN THE COMPLAINT[1]

I.   **The Product**

The Product provides a "uniquely effective, long-lasting, continuous mosquito control system."  *See* Declaration of Edward P. Boyle, dated January 6, 2020 ("Boyle Decl.") ¶ 2 & Ex.

---

[1] There are numerous inaccurate, misleading, and incomplete allegations in the Complaint.  A Rule 12(b)(6) motion is not the appropriate vehicle to correct those allegations, as the Complaint still fails to allege facts that state a viable cause of action against any defendant.  The Spartan Defendants reserve all their rights to correct Plaintiff's misstatements, if and when necessary.

1.  According to the Product package, which is incorporated by reference in the Complaint, the Product is a tube-shaped device with access holes for mosquitoes.  *Id.*  The active ingredient is 11.48% sodium chloride and the inert ingredients are 88.34% and 0.18% of sucrose and yeast, respectively.  *Id.*  One box per acre is to be used at the start of mosquito season to achieve desired results; if deployed later, then the number of tubes should be doubled.  *Id.*  The Product contains detailed instructions for use, including to fill the tubes with "WARM water," and to ensure over time that "the water level remains above the WATER LEVEL LOW line for optimal performance."  *Id.* at ¶ 3 & Ex. 2.  The Product's website also directs the user to "replace [the Spartan Mosquito Eradicator] at least  every 90 days."  Compl. ¶ 3.  Purchase was not necessary to read the full instructions, as the Product packaging clearly stated: "SEE OUR INSTRUCTIONS ONLINE AT WWW.SPARTANMOSQUITO.COM."  *Id.* at ¶ 2 & Ex. 1.[2]

## II.   <u>Allegations in the Complaint</u>

The Complaint alleges that the Product represents that it "eradicate[s] your mosquito population for up to 90 days," provides "do-it-yourself mosquito control," "[s]ignificantly decreases population within 15 days," and "[p]rovides up to 95% mosquito control for up to 90 days."  Compl. ¶¶ 2-3.  The Complaint alleges that these representations are false, based on the conclusory assertion that the Product "is ineffective"  because "it does not kill mosquitoes or decrease mosquito populations."  *Id.* ¶ 4.  The Complaint also alleges that a graph on the back of the Product's packaging is false because it is supposedly based on a "scientifically invalid" test performed by Defendant Bonner Analytical.  *Id.* ¶¶ 26-29.

Plaintiff alleges that he resides in Brooklyn, New York, and that he purchased the

---

[2] The Spartan Defendants submit that as a result of a recent refit of the website, the instructions are no longer online.  At the time of Plaintiff's purchase, the instructions were still available on the Spartan website.

Product from a Home Depot store there for approximately $25 in 2019. *Id.* ¶ 33. He alleges he made this purchase in reliance on the Product's labeling, and not based on any advertising or marketing for the Product. *See id.* He further alleges (without detail) that he properly used the Product and that it "did not provide effective mosquito control." *Id.*

Based on these allegations, Plaintiff seeks to represent a class of all people in the United States and New York who have purchased the Product. *Id.* ¶¶ 40-41. The Complaint asserts causes of action against all Defendants for (i) violations of New York General Business Law §§ 349 and 350 (Counts I and II), *id.* ¶¶ 47-60; (ii) unjust enrichment (Count III), *id.* ¶¶ 61-66[3]; (iii) breach of express warranty (Count IV), *id.* ¶¶ 67-72; (iv) violation of the Magnuson-Moss Warranty Act (Count V), *id.* ¶¶ 73-81; and (v) fraud (Count VI). *Id.* ¶¶ 82-87. Plaintiff seeks injunctive relief, compensatory, statutory, and punitive damages, restitution, and attorneys' fees. *Id.* ¶¶ 53, 60, 66, 87, & 88.

## III.    The Inapposite "Scientific Support" Cited in the Complaint

Plaintiff's core contention is that the Product's combination of ingredients cannot kill mosquitoes. *See* Compl. ¶¶ 9, 19. The Complaint alleges that the Product's salt content is "remarkably close to the salt content in human blood—1% of the Product solution vs. .9% observed in human blood." *Id.* ¶ 10. The Complaint does not address how natural evaporation affects the salt concentration of the water in the Product tubes over time, when the Product is used as directed.

### A.    The Aryaprema Study Disregarded Product Instructions.

---

[3] In Plaintiff's Response to Spartan Defendants' Letter Request for a Pre-Motion Conference (the "Response Letter"), he noted he will no longer pursue his claim for unjust enrichment. CM/ECF No. 18 at 3 n.2. Accordingly, Count III of the Complaint should be dismissed as well.

The Complaint cites to a paper that describes "laboratory" and "field" tests of the Product with respect to a single mosquito species.  *See* V. Aryaprema, "Efficacy of Commercial Attractive Toxic Sugar Bait Station (ATSB) Against Aedes Albopictus," (the "Aryaprema Study") (cited in Compl. ¶¶ 5, 6), and attached as Exhibit 3 to the Boyle Declaration.).  The Aryaprema Study indicates that the manner in which the testing was conducted deviated from the Product's directions in multiple, substantial ways.

The Aryaprema Study claims the "field" test was conducted by placing five Product tubes in tire piles, four meters apart.  This defies the Product's instructions, which state that at least two tubes should be used per acre, and that the two tubes should be at least 180 feet (or 54.8 meters) apart and 90 feet (or 27.4 meters) from where people gather.  *See* Boyle Decl. ¶ 3, Ex. 2 at 2, 3.  The instructions direct that the tube should be hung from a tree, six feet above the ground, in a well-shaded location to slow the evaporation process.  *See id.* at 2.  The Aryaprema Study does not represent that the tubes in the "tire piles" complied with the instructions' hanging, height, shade, and distance requirements, and it is hard to imagine how they could have.  The supposed "laboratory" study involved two Product tubes in one tent, far closer to each other than the Product instructions direct.  *See id.*  The Aryaprema Study does not state whether the tubes were hanging six feet above ground, as the Product directions indicate.

The instructions state that water at or above 80 degrees Fahrenheit should be added to the Product when first used, and warns that the Product will not work well unless the water reaches this temperature.  *See id.*  The Aryaprema Study says nothing about the temperature of the water used in either test, and fails to note anything in the study about recording such temperature.  In fact, the Aryaprema Study describes test conditions that show the Product's water temperature would have been colder than the instructions direct:  The study claims that the testing was done

between October and December 2019, making it highly unlikely that the water temperature in the field study ever reached 80 degrees naturally.  And, the air temperature in the laboratory study never exceeded 24.6°C (which is 76.28°F).  Further, the Product packaging instructs that it should be used "as soon as the weather begins to warm"—a different time of year than October to December.  *See* Boyle Decl. ¶ 2, Ex. 1.

The Aryaprema Study's method for assessing results was particularly inapt.  The laboratory test concluded after only three days, while the Product instructions indicate that the tubes should be used for at least 15 days.  *See* Boyle Decl. ¶ 3, Ex. 2.  The field test did not purport to measure decrease in the mosquito population, and instead counted dead mosquitoes in the Product tubes.  The Aryaprema Study does not explain why dead mosquitoes outside the tubes were not counted, especially since the Product does not purport to kill mosquitoes instantly while they are inside the tubes.

B. **The Other Authorities Cited in the Complaint Do Not Concern the Product**.

The Complaint cites to several other authorities, none of which says anything about the Product or its combination of ingredients.  Nor do any of these sources analyze whether the Product's ingredients are effective to kill mosquitoes.  The sources identified in the Complaint are described below:

- Plaintiff alleges that an unpublished paper by Donald Yee states that "no known scientific efficacy data" shows that salt ingestion will significantly reduce mosquito populations.  Compl. ¶ 12, Ex. A (the "Yee Paper").  The Yee Paper purports to have tested the efficacy of salt-only and salt-and-sugar combinations to kill nine different mosquito species over a seven-day period.  *Id*. at 3.  The Yee Paper does not claim to have tested the complete or accurate formulation of ingredients in the Product.  The testing described in the Yee Paper was concluded after only seven days, when the

Product instructs that results will be seen within 15 days.  *See* Compl. ¶¶ 2-3, 12 & Ex. A at 5.  And, notably, by the final testing day, the salt-and-sugar combination yielded a higher mortality rate for two of the nine species of mosquitoes tested. Compl. Ex. A. at 7.

- Plaintiff cites two textbooks, "The Biology of Mosquitoes" by Clements (the "Clements Textbook"), published in 2000, and "Aedes aegypti.  The yellow fever mosquito: Its life history, bionomics and structure" by Christophers (the "Christophers Textbook"), published in 1960, as support for allegations concerning mosquitoes' interaction with salt.  Neither textbook addresses the toxicity to mosquitoes of salt levels comparable to the Product.  Contrary to the Complaint's assertions, the Clements textbook does not state that mosquitoes urinate out all salt they ingest, only that their urine has a higher salt concentration after a blood meal. *See* Boyle Decl. ¶ 5, Ex. 4.  It does not say whether salt content at higher levels is toxic for mosquitoes when ingested.  *See id.*  Plaintiff's description of the Christophers Textbook is inaccurate, as the text does not assert that excessive salt dissuades mosquitoes from consuming food or laying eggs.  *See* Boyle Decl. ¶ 6, Ex. 5.  Rather, it cites numerous other studies that indicate mosquitoes will lay their eggs in water with varying ranges of salt content.  *See id*.

- Plaintiff cites a 2016 article titled "Artificial diets for mosquitoes" by Gonzales (the "Gonzales Article") to support its allegation that the "consumption of salt content in mosquitoes causes them to consume *more* blood than they otherwise would have." Compl. ¶ 18 (emphasis in original).  The Gonzales Article does not say this, and instead merely cites three authorities for the proposition that mosquitoes are attracted

8

to salt—a proposition that is consistent with the Product's efficacy.  *See* Boyle Decl. ¶ 7, Ex. 6. at 8.

- Plaintiff cites to "Mosquito Phytophagy—Sources Exploited, Ecological Function and Evolutionary Transition to Haematophagy" by Peach (the "Peach Article"), and "Consequences of a nectar yeast pollinator preference and performance" by Schaeffer (the "Schaeffer Study").  Both address yeast—one of the Product's ingredients. These articles say only that yeast is found naturally in rotting fruit and nectar, which are preferred mosquito foods.  Compl. ¶ 19.  *See* Boyle Decl. ¶¶ 8, 9 & Exs. 7, 8. This is also consistent with the Product attracting mosquitoes.

- Plaintiff cites the articles "The Plasmodium bottleneck: malaria parasite losses in the mosquito vector" by Smith (the "Smith Article") and "Mosquitoes can harbor yeasts of clinical significance and contribute to their environmental dissemination" by Bozic (the "Bozic Study") to allege that yeast is present in mosquitoes' digestive tracts. Compl. ¶ 20.  *See* Boyle Decl. ¶¶ 10, 11 & Exs. 9, 10.  This is irrelevant to whether the Product is effective at killing mosquitoes.

- Plaintiff cites an article titled, "Mosquito-Fungus Interactions and Antifungal Immunity, Insect Biochemistry and Molecular Biology" by Tawidian (the "Tawidian Article") to allege that "yeast and sugar are also found in human blood."  Compl. ¶ 20.  The Tawidian Article is a review that "summarize[s] the potential environmental and molecular interactions of mosquito adults and larvae with fungi and water molds."  *See* Boyle Decl. ¶ 12, Ex. 11.  Again, this has no bearing on whether the Product is effective.

- Plaintiff provides a link to a website for a group that calls itself the "Mosquito Illness

Alliance," which lists the Product under "Myths/Scams (Products that do not work)."
Compl. ¶ 21.  The website asserts the bare conclusion that the Product's claims of
efficacy have been "debunked" by unidentified "independent research."  *See* Boyle
Decl. ¶ 13, Ex. 12.  Without identifying any of this supposed research, this conclusory
statement hardly amounts to scientific support for Plaintiff's claims that the Product
does not work.

**IV.**    <u>**Plaintiff's Allegations Concerning Defendant Hirsch**</u>

The Complaint asserts claims against Hirsch in his individual capacity.  Plaintiff alleges
that Hirsch is President of Spartan, and "acts as Spartan's spokesperson, regularly promoting the
Product on television and other media."  Compl. ¶ 36.  Plaintiff does not allege that he ever saw
or heard any statement by Hirsch promoting the Product, or that any such statement led him to
buy the Product.  Instead, Plaintiff alleges that he bought the Product in reliance on the
statements on the Product label—and nothing more.  *Id.* ¶ 33.  The Complaint alleges that Hirsch
"has personally participated in [a] campaign of intimidation and concealment," *id.* ¶ 36, but does
not allege that any of this supposed conduct took place in New York, caused harm to anyone in
New York, or has any relationship to Plaintiff's claims.

## <u>APPLICABLE STANDARDS</u>

### <u>Rule 12(b)(2)</u>

On a Rule 12(b)(2) motion, plaintiff bears the burden of establishing personal jurisdiction
over each defendant by a preponderance of the evidence.  *Pierce v. Black*, No. 97-3037, 1998
WL 461482, at *2 (E.D.N.Y. Aug. 6, 1998).  On such a motion, the Court may consider
materials outside the pleadings, including affidavits and other written materials.  *Sidik v. Royal
Sovereign Int'l, Inc.*, No. 17-7020, 2020 WL 5441306, at *6 (E.D.N.Y. Sept. 10, 2020); *Godoy v.
BMW of N. Am., LLC*, No. 16-5502, 2018 WL 4608200, at *3 (E.D.N.Y. Sept. 25, 2018).

In a diversity action, "whether the court has personal jurisdiction over a defendant is determined by the law of the forum in which the court sits—in this matter, New York" and whether it would comport with the requirements of due process for the Court to assert jurisdiction over him under that law. *Sidik*, 2020 WL 5441306, at *2 (internal quotation marks and citations omitted).  In New York, a defendant may be subject to personal jurisdiction based on general jurisdiction pursuant to N.Y. C.P.L.R. 301 or specific jurisdiction pursuant to N.Y. C.P.L.R. 302.  *Id.* at *3-*5.

## Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) will be granted where the complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Geffner v Coca-Cola Co.*, 928 F.3d 198, 199 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a standard which "demands more than a sheer possibility that a defendant has acted unlawfully." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

In a false advertising case, the "primary evidence" is "the advertising itself." *Id.* at 742. Therefore, "[i]n a case alleging deceptive advertising, a court may consider the full content of the relevant advertisement even if not contained in" the complaint. *Boshnack v. Widow Jane Distilleries LLC,* No. 19-8812, 2020 WL 3000358, at *2 (S.D.N.Y. June 4, 2020) (citing *Fink*, 714 F.3d at 741); *see also Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 389 (E.D.N.Y. 2017) (taking judicial notice of "complete labels for each variety of Sapporo beer" challenged by plaintiff); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 332 n.3 (E.D.N.Y. 2018)

("When a plaintiff relies on a document (or, as here, a label) in drafting his complaint, it is appropriate for the court to consider that document in deciding a motion to dismiss.").

In addition, the Court may take judicial notice of the textbooks, articles, and studies cited by Plaintiff as documents incorporated by reference into the Complaint. *See, e.g.*, *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) ("In ruling on a 12(b)(6) motion . . . a court may consider the complaint as well as any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.") (citation and internal quotation marks omitted).

## ARGUMENT

### I. All Claims Against Defendant Hirsch Should Be Dismissed Under Rule 12(b)(2) Because He Is Not Subject to Personal Jurisdiction in New York.

As a preliminary matter, Hirsch should be dismissed from this case because he is not subject to either general or specific jurisdiction under New York law. *See Sidik*, 2020 WL 5441306, at *3-*5  (a court sitting in diversity in New York must determine whether the plaintiff has shown that a non-resident defendant is subject to general jurisdiction under N.Y. C.P.L.R. 301 or specific jurisdiction under N.Y. C.P.L.R. 302).[4]

As Plaintiff concedes, Hirsch is a Mississippi resident.  Compl. ¶ 30; Declaration of Jeremy Hirsch, dated January 4, 2021 ("Hirsch Decl.") ¶ 1.  Hirsch does not reside in New York; he does not own property, hold bank accounts, or conduct personal business in New York. Hirsch Decl. ¶ 2.  He does not regularly travel to New York.  *Id.* ¶ 3.  The last time Hirsch was in New York was a two-day personal trip to Plattsburgh in the summer of 2005, after returning

---

[4] In his December 8, 2020 letter to the Court opposing the Spartan Defendants' request for a pre-motion conference ("Response Letter"), Plaintiff's counsel incorrectly asserted that the Court has "conspiracy jurisdiction" over Hirsch.  CM/ECF No. 18 at 1.  There can be no basis for "conspiracy jurisdiction" here, since the Complaint does not allege a conspiracy.  *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018).

from assignment in Guantanamo Bay.  *Id.*  Hirsch is no longer the President of Spartan.  *Id.* ¶ 5. Spartan does not have a New York-specific marketing strategy, and Hirsch does not direct Spartan's marketing efforts in New York.  *Id.*  ¶ 6.  Hirsch was not served with process in New York.

Given the absence of contacts, Hirsch is not subject to general personal jurisdiction in this forum.  *Levin v. Am. Doc. Servs., LLC*, No. 17-1285, 2018 WL 2057144, at *7, 9 (E.D.N.Y. Jan. 19, 2018), *report and recommendation adopted*, 2018 WL 1358815 (E.D.N.Y. Mar. 16, 2018); *see also Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 386-86 (E.D.N.Y. 2015) (noting that since the Supreme Court's guidance in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), New York exercises general personal jurisdiction only if the party's affiliations with the state are "so continuous and systemic as to render [the corporation] essentially at home in [New York]") (internal quotations omitted).

Hirsch's alleged employment by Spartan does not give rise to jurisdiction over Hirsch. "New York courts have concluded that [C.P.L.R.] 301 applies to persons acting only in their individual capacities, and that their activities on behalf of an employer or corporation will not support the exercise of personal jurisdiction."  *Trisvan v. Heyman*, 305 F. Supp. 381, 394 (E.D.N.Y. 2018) (citation and quotations omitted); *see also Leger v. Kalitta*, No. 16-6545, 2018 WL 2057142, at *5 (E.D.N.Y. Jan. 26, 2018) ("The Court may not extend personal jurisdiction to a non-domiciliary individual based on a corporation's business transactions within the state merely because the former is the owner or a corporate officer of the latter."), *report and recommendation adopted*, ECF No. 36 Feb. 21, 2018).  Further, general allegations that an officer controls a corporation does not establish jurisdiction.  *Levin*, 2018 WL 2057144, at *11 ("Plaintiffs only allege that Johnson was Executive Vice President of LPS and that he had

supervisory authority over the Defendants.  This allegation is not enough to establish that

Johnson exercised sufficient control over the assignments to be considered a primary actor.")

(internal quotations and citations omitted).

The Complaint also fails to establish specific jurisdiction over Hirsch because there are

no allegations that he transacted business in New York within the meaning of C.P.L.R. 302(a).

*See Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*, No. 18-3528, 2019 WL 2504039, at *9

(E.D.N.Y. June 17, 2019).  Specific jurisdiction requires a finding that the non-domiciliary's

activities "were purposeful and that there is a substantial relationship between the transaction and

the claim asserted."  *Id.* (citation omitted).  Plaintiff must show "[m]ore than limited contacts";

New York case law holds that "[i]t is the quality of the defendant's New York contacts that is the

primary consideration" in a 302(a)(1) analysis.  *Id.* (citations and internal quotation marks

omitted).

Plaintiff has not pled *any* facts connecting Hirsch to New York.  *See Ballard v. Walker*,

No. 11-5874, 2013 WL 6501234, at *1-2 (S.D.N.Y. Dec. 11, 2013) (dismissing complaint on the

grounds that it did "not even mention that anyone did any of the alleged acts in New York").

Plaintiff alleges that Hirsch "acts as Spartan's spokesperson, regularly promoting the Product on

television and other media" and that he "personally participated in the campaign of intimidation

and concealment . . . .", *see* Compl. ¶ 36, without suggesting that any of this alleged conduct was

directed to or conducted in New York.[5]  Nor does the Complaint allege that any action by Hirsch

as "spokesperson" bore any relation to Plaintiff's claims:  Plaintiff does not allege that he

purchased the product based on any statements by Hirsch, and instead only alleges that he relied

---

[5] Plaintiff claims in his Response Letter that "jurisdiction over Hirsch may also be premised on
endorser liability," CM/ECF No. 18 at 2, but this theory could not apply because the Amended
Complaint does not allege that Hirsch made any deceptive statements within New York.

on the statements on the Product's label. Plaintiff has thus failed to meet his burden to establish personal jurisdiction over Hirsch, and the claims should be dismissed. *See, e.g.*, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990); *Reliance First Capital, LLC*, 2019 WL 2504039, at *12.

Judge Feuerstein's decision in *Wolo Mfg. Corp. v. ABC Corp.* is instructive here. 349 F. Supp. 3d 176 (E.D.N.Y. 2018). *Wolo Manufacturing* addressed whether a corporate officer who did not live in New York, work in New York, or have personal dealings in New York, could nevertheless be subject to personal jurisdiction in New York based on the corporate employer's activities in New York. 349 F. Supp. 3d at 195-99. The court found that the officer was not subject to personal jurisdiction in New York and dismissed the complaint against him. *Id.* at 199. Particularly relevant here, *Wolo Manufacturing* found that "[p]laintiff's conclusory allegations" that the officer "was a primary actor in the specific transactions giving rise to plaintiff's claims" and "exercised control over the corporation" were insufficient to confer personal jurisdiction. *Id.* at 199 (internal quotations and citations omitted). Similarly, Hirsch is an out-of-state defendant, and there is no allegation that he personally participated in any conduct underlying Plaintiff's claims. Like the officer defendant in *Wolo Manufacturing*, the claims against Hirsch should be dismissed on jurisdictional grounds.

## II. All Claims Should Be Dismissed Under Rule 12(b)(6) Because No Facts Are Alleged to Plausibly Support Plaintiff's Claims that the Product's Advertising Is False.

Under Rule 12(b)(6), the entire Complaint should be dismissed for failure to allege facts that could plausibly lead to a conclusion that the representations on the Product label are false.

All Plaintiff's claims are based on the unsupported conclusion that the Product is a "scam" and "does not kill mosquitoes or decrease mosquito populations." Compl. ¶ 4. The only supposed facts offered for this conclusion are snippets from various scientific articles and

textbooks that, on their own and taken together, have no relevance to the Product, its efficacy, or Plaintiff's alleged injury.  Plaintiff has "chosen to use scientific studies in an effort to raise plausible inferences" that the Product's advertising claims "are simply not true."  *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015).  "Because the studies cited do not do so, . . . all of plaintiff['s] claims fail to meet the standards under" Rule 12(b)(6).  *Id.*

A.  <u>**None of the Alleged Scientific Support Refutes the Product's Efficacy Claims**</u>.

On a Rule 12(b)(6) motion, the Court may read the scientific sources cited in the Complaint to consider whether it supports Plaintiff's claims.  "[W]here scientific studies are cited and thus incorporated into the complaint, and where those studies simply do not support the allegations, the Court may find that the deficiencies go to the very heart of the plausibility standard under *Iqbal*."  *Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F. Supp. 3d 131, 148 (S.D.N.Y. 2020) (citation and internal quotation marks omitted); *see also Kardovich*, 97 F. Supp. 3d at 140-41 (analyzing plaintiffs' studies on a motion to dismiss because "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true") (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011)) (quotation marks omitted); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-727, 2012 WL 5382218, at *6 (S.D. Cal. Nov. 1, 2012) (stating that "it's not really arguing the merits to claim . . . that the studies on which Eckler relies didn't even test the actual formulation of Equate. If that's true, the studies simply wouldn't show what Eckler claims they do, and the Court would be left with no facts from which to infer that Wal–Mart is liable for false advertising").

Numerous courts have held that scientific studies and articles that do not examine the product at issue cannot show the falsity of its advertising.  *See, e.g.*, *Aloudi v. Intramedic Research Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017) ("Aloudi's complaint also refers to a

16

mouse study allegedly showing that chlorogenic acid contributes to increased insulin resistance and fatty liver disease.  None of these allegations involves scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM, in a dose similar to that in JavaSLIM."); *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 258 (E.D.N.Y. 2014) (granting motion to dismiss because, among other reasons, plaintiff "points to nothing, in the form of scientific evidence or otherwise, that could discredit Estee Lauder's statements about the ANR products' skin benefits); *Tubbs v. AdvoCare Int'l, LP*, No. 17–4454, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) (granting motion to dismiss; finding that "studies that did not involve the products at issue [are] insufficient" in demonstrating falsity); *Eckler*, 2012 WL 5382218, at *6 (granting motion to dismiss, noting that "[t]he first problem for Eckler, as Wal–Mart points out, is that none of these studies actually involved Equate."); *see also Spector v. Mondelez Int'l, Inc.*, No. 15-4298, 2017 WL 4283711, at *4 (N.D. Ill. Sept. 27, 2017) (granting motion to dismiss because, among other things, plaintiff did not allege the existence of any testing or studies regarding the product that directly contradicted the defendant's claim about the product's efficacy).  These courts have recognized that, when products "contain[] a number of ingredients," it is the "overall formulation that's behind the representations at issue." *Eckler*, 2012 WL 5382218, at *6; *see also Spector*, 2017 WL 4283711, at *5; *Hodges v. Vitamin Shoppe, Inc.*, No. 13–3381, 2014 WL 200270, at *4 (D. N.J. Jan. 15, 2014) (finding that the "assertion that the Product is ineffective appears, however, to be based on Plaintiff's own conclusion as to the inability of the Product's four active ingredients … to deliver the promised benefits.").

Here, while the Complaint identifies a number of scientific sources, none of them provides substantive support to Plaintiff's allegations that the Product does not work as advertised.  Of all the sources named in the Complaint, the only that purports to have tested the

Product is the Aryaprema Study.  And, the Aryaprema Study describes a testing method that deviated substantially from the Product's directions in several basic ways:  The water temperature was wrong; the duration of use was wrong; the method for counting mosquitoes killed by the Product was wrong; the tube placement was wrong.  *See* pp. 5-7, *supra*.  Given these critical flaws, the test results in the Aryaprema Study do not discredit the efficacy statements on the Product's label, and thus do not support Plaintiff's allegations.  *See Sabol*, 439 F. Supp. 3d at 148; *Kardovich*, 97 F. Supp. 3d at 138.

The other sources listed in the Complaint are similarly inapposite.  Plaintiff acknowledges that water is added to the Product tube to create a "four-ingredient solution."  Compl. ¶ 7.  None of the sources cited in the Complaint addresses whether the Product's combination of ingredients is effective in killing mosquitoes—let alone whether the Product itself is effective.

The Yee Paper, for example, is immaterial because it purports to have tested only two of the Product's four ingredients, and did so for only seven days—less than half the 15 days that the Product advises to see results.  *See* Compl. ¶¶ 2-3, 12 & Ex. A.  The Yee Paper also does not purport to have complied with the Product's instructions regarding the use of water above 80 degrees Fahrenheit, the nature or placement of any devices containing the solution, or other particulars.  *Id.* Ex. A.

For the remainder of sources cited, the Complaint simply pieces together snippets, to lead to a false conclusion about the Product that no source actually supports.  This patchwork approach to scientific sourcing is legally insufficient to support Plaintiff's claims.  Unless the cited sources addressed what the actual formulation in the product can do, those cites do not qualify as supporting allegations of fact for purposes of a Rule 12(b)(6) motion.  *Eckler*, 2012

WL 5382218, at *6.

For example, the Clements and Christophers Textbooks address mosquitoes' consumption of salt, but do not say anything about the toxicity of the salt solution in the Product when it is used as directed. *See* Compl. ¶¶ 11, 17; *see also* Boyle Decl. Ex. 4, 5.[6]

The other authorities cited are even more immaterial to the question of the Product's efficacy. The Gonzales Article collects and reviews other studies regarding the development of artificial diets for mosquitoes. *See* Compl. ¶ 18 & Boyle Decl. Ex. 6. The Peach Article reviews and summarizes other research regarding mosquitoes' consumption of plants. *See* Compl. ¶ 19 & Boyle Decl. Ex. 7. The Schaeffer Study examines "interactions between" bumblebees and nectar-inhabiting yeast. *See* Compl. ¶ 19 & Boyle Decl. Ex. 8. The Smith Article addresses mechanisms to limit malaria transmission through mosquitoes. *See* Compl. ¶ 20 & Boyle Decl. Ex. 9. The Bozic Article investigates "the fungal community in different mosquito species." *See* Compl. ¶ 20 & Boyle Decl. Ex. 10. And the Tawidian Article reviews other research about interactions between mosquito adults and larvae with fungi and water molds. *See* Compl. ¶ 20; Boyle Decl. Ex. 11.

As a result, all of the scientific sources identified in the Complaint are insufficient as a matter of law to provide plausible support for Plaintiff's claims. "In the false advertising context, an advertising claim is false if it has actually been disproved, that is, if the plaintiff can point to evidence that directly conflicts with the claim." *Kwan v. SanMedica Int'l, LLC*, No. 14-03287, 2015 WL 848868, at *4 (N.D. Cal. Feb. 25, 2015), *aff'd sub nom. Kwan v. SanMedica Int'l,* 854 F.3d 1088 (9th Cir. 2017) (citation and internal quotation marks omitted); *see also*

---

[6] The Christophers Textbook tends to support the Product's efficacy, stating that mosquitoes lay their eggs in water containing varying levels of salt. *See* Compl. ¶ 17 & Boyle Decl. Ex. 5.

*Engel v. Novex Biotech LLC*, No. 14–03457, 2015 WL 846777, at \*5 (N.D. Cal. Feb. 25, 2015) (dismissing plaintiff's false advertising claim for, in part, failure to allege that defendants' claims could be scientifically disproven).  Thus, courts have found scientific studies cannot show falsity if they do not examine the actual advertising claims at issue.  *See, e.g.*, *Eckler*, 2012 WL 5382218, at \*7 ("[T]he Court cannot accept that the studies Eckler cites lend 'facial plausibility' to her claims that the Equate representations are false or misleading" because plaintiff's studies about a degenerative joint disease did not "address the far more general claim—which is made by the Equate representations—that glucosamine is good for the body's joints.").  As *Eckler* held, false advertising claims are dismissed when there is "this kind of mismatch between the representations at issue and the evidence that allegedly debunks them."  *Id.*

This Court's *Kardovich* decision is instructive.  *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131 (E.D.N.Y. 2015).  Like Plaintiff here, the *Kardovich* plaintiffs based their claims on studies that were not relevant to the advertising claims at issue.  97 F. Supp. 3d at 138.  The *Kardovich* plaintiffs alleged that Centrum-brand vitamins falsely advertise their ability to benefit "the normal function of the immune system," "free radical damage caused by environmental stress," "the metabolism of fats, carbohydrates and proteins," "vitality" and "energy support," and "the effects of physical stress."  *Id.* (quotations omitted).  They cited "a number of scientific studies and other materials" to allegedly show the "false, misleading and deceptive nature of Centrum's promises to provide positive health benefits."  *Id.* at 133 (quotations omitted).  This Court found that plaintiffs' scientific materials addressed medical conditions that Centrum made no claim to treat, and thus "in no way correlate to, let alone contradict as plaintiffs allege, the unrelated claims made by Centrum about its health benefits."  *Id.* at 137-38.  This Court also rejected plaintiffs' attempts to rely on a demand letter from a consumer advocacy group because,

without the underlying scientific studies, those "unsupported statements d[id] nothing to support the plausibility of plaintiffs' claim . . . ." *Id*. at 140.

Based on the mismatches between the plaintiffs' studies and Centrum's advertising claims, the *Kardovich* court held that plaintiffs failed to state a claim that Centrum's advertising was false because "the science d[id] not undercut Centrum's statements regarding its health benefits." *Id.* at 138.  It found that "[a]s here, where plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made about Centrum's benefits is fatal to plaintiffs' complaint." *Id.* (citing *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 457–58 (E.D.N.Y. 2013), and *Eckler*, 2012 WL 5382218, at *3).

Like in *Kardovich*, there is a "stark disconnect" in this case between Plaintiff's scientific support and the Product's advertising claims.  None of Plaintiff's cited studies or other sources says anything about advertising claims for any mosquito repellant product, let alone the specific advertising claims made by Spartan's Product.  Plaintiff's reliance on conclusory statements on the Mosquito Illness Alliance website are also misplaced.  That website provides no support for its conclusory assertions that the Product does not work, and does not identify the purported "independent research" upon which its conclusions apparently rest.  *Id.*; *see also* Boyle Decl. Ex. 11.  These "unsupported statements do nothing to support the plausibility of [P]laintiff['s] claim."  *Kardovich*, 97 F. Supp. 3d at 140.  For this reason, the Complaint should be dismissed.

**B.**  **The Complaint's Remaining Allegations Do Not Plausibly Plead that the Product's Advertising Is False.**

Plaintiff's remaining allegations also fail to plead that the Product's advertising is false.

*First*, Plaintiff's allegations regarding a graph on the Product's packaging do not plead falsity.  *See* Compl. ¶¶ 26-29.  The package does not claim the graph is based on a "test," as

Plaintiff alleges.  *See id.*  In any case, Plaintiff's allegations amount to nothing more than an assertion that Spartan's testing was inadequate and that the graph lacks substantiation.  As a matter of law, allegations of inadequate substantiation are insufficient to plead falsity.  *See Kwan*, 2015 WL 848868, at *7 ("If Plaintiff wishes to bring claims alleging that Defendant's advertisements are false or misleading, then she must do so based on actual facts showing this, not simply an assertion that Defendant's substantiation is inadequate."); *Eckler*, 2012 WL 5382218, at *3 ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved.  In common usage, we might say that both are 'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former."); *Hughes*, 930 F. Supp. 2d at 456–57 ("there is no private remedy for 'unsubstantiated advertising'").

*Second*, Plaintiff's sparse anecdotal allegations do not plausibly plead that the Product's advertising is false.  *See Compl.* ¶ 33 (alleging generally that Plaintiff "used the Product according to the Product's directions, but it did not provide effective mosquito control as advertised").  "Plaintiff['s] anecdotal evidence, standing alone, is insufficient to create an inference of falsity."  *Tubbs*, 785 F. App'x at 396 ("The experiences of only two persons are unlikely to raise an inference of falsity because reasonable consumers generally do not understand marketing statements as promises of perfection."); *accord. Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 872 (E.D.N.Y. 2018) (noting that in the summary judgment context, anecdotal evidence is insufficient to create a genuine issue of material fact).

*Third*, Plaintiff makes vague allegations against Hirsch and Spartan that are immaterial to the claims that the Product's advertising is false.  Allegations that Spartan has "suppressed" its own studies using nondisclosure agreements, or that Hirsch "has made personal threats to at least

one scientist," "left menacing communications to Colin Purrington" and "wrote a public response" on Amazon regarding Purrington's wife, may be sensational, but are substantively meaningless in the analysis of Plaintiff's claims.  *See* Compl. ¶ 24.  None of these allegations nudge Plaintiff's "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.   Additional Grounds for Dismissing Plaintiff's Claims.

While Plaintiff's failure to plead facts to support an inference that the Product's advertising is false requires dismissal of all his claims, certain claims should be dismissed for additional reasons.

### C.   The Complaint Fails to Allege Any Conduct by Defendant Hirsch Caused Plaintiff Harm.

In addition to lack of personal jurisdiction, *see* pp. 11-14 *supra*, the claims against Hirsch fail because Plaintiff does not allege that Hirsch caused him any harm.  The Complaint alleges that Plaintiff bought the Product in reliance on its labeling, not any statements made by Hirsch.  *See* Compl. ¶ 33.  Each of the Complaint's counts alleges that Plaintiff and putative class members were injured because they relied on the Product label's representations that it "'eradicate[s] your mosquito population for up to 90 days,' and that it provides 'do-it-yourself mosquito control."  *See id.* ¶¶ 52, 59, 65, 71, 81 & 87.  The Complaint does not allege that Plaintiff or any putative class member bought the Product based on any statements made by Hirsch.  Therefore, the Complaint fails to plead that Hirsch "is liable for the misconduct alleged," and the claims against him should be dismissed in their entirety.  *Fink*, 714 F.3d at 741 (citation omitted).

### D.   Plaintiff Lacks Standing to Seek Injunctive Relief.

Plaintiff lacks standing to seek injunctive relief because he could not suffer future harm

or continuing injury.[7]  "A plaintiff seeking to represent a class must personally have standing to pursue each form of relief sought," and "[a] plaintiff lacks standing to pursue injunctive relief if he is unable to establish a real or immediate threat of injury."  *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43, 44 (2d Cir. 2018) (citations and internal quotation marks omitted). In *Kommer*, the Second Circuit held that a plaintiff who failed to allege he would buy the product again had "no standing under Article III to enjoin the defendants' sales practices."  *Id.*

Here, Plaintiff concedes that he "would not have purchased the Product at all, or would have only been willing to pay a substantially reduced price for the Product, had he known that [the Product's] representations were false and misleading."  Compl. ¶ 33.  This is effectively an admission that Plaintiff would not again purchase the Product based on its advertising, and he thus lacks standing to seek injunctive relief.  *See, e.g.*, *Sharpe v. A&W Concentrate Co.*, No. 19-768, 2020 WL 4931045, at *4 (E.D.N.Y. Aug. 24, 2020) ("On the face of the complaint, plaintiffs concede that they would not have purchased the sodas if they had known of the beverages' true vanilla composition. And now that they are aware of the drink's ingredients, plaintiffs state they do not intend to purchase it again, unless defendants change either the product or the labeling.  Because plaintiffs admit that they are unlikely to purchase the products at issue, unless the products are changed, they lack standing to seek injunctive relief.").

---

[7] Federal Rule 12(b)(1) requires dismissal for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate" the matter.  *Atik v. Welch Foods, Inc.*, No. 15-5405, 2016 WL 5678474, at *3 (E.D.N.Y. Sept. 30, 2016) (internal quotation marks and citations omitted); *see also Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("If [plaintiff] lacks standing, we lack subject matter jurisdiction to entertain a request for such relief.").

## **CONCLUSION**

For the reasons set forth above, the claims against Defendant Hirsch should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), and the entire Complaint should be dismissed pursuant to Rule 12(b)(6).

Dated: New York, New York
      January 6, 2021

                        VENABLE LLP

                        By: * /s/ Edward P. Boyle*
                                Edward P. Boyle
                                Anna G. Dimon
                        Rockefeller Center
                        1270 Avenue of the Americas
                        New York, NY 10020
                        Tel: (212) 808-5675
                        epboyle@venable.com
                        agdimon@venable.com

                        *Attorneys for Defendants AC2T, Inc. and Jeremy Hirsch*