UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KALMAN ROSENFELD, individually and on
behalf of all others similarly situated,

                               Plaintiff,

    v.

AC2T, INC., BONNER ANALYTICAL
TESTING CO., and JEREMY HIRSCH,

                            Defendants.

Case No. 1:20-cv-04662-RRM-PK

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

Dated:  February 3, 2021

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  ykopel@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ................................................................................................1

LEGAL STANDARD ..........................................................................................2

ARGUMENT.......................................................................................................4

I.       PLAINTIFF PLAUSIBLY ALLEGES HIS CLAIMS ....................................4

       A.     The Weight Of Scientific Evidence Is Not Properly Considered At The Pleadings Stage ..............................................................................4

       B.     Plaintiff's Cited Scientific Evidence Supports A Plausible Inference That The Product's Labeling Claims Are False ...................7

       C.     Spartan's "Lack Of Substantiation" Argument Is Wrong...................10

       D.     Plaintiff Alleges That Spartan's Labeling Claims Are False Based On Independent Scientific Evidence – Not His Own Anecdotal Experience .......................................................................................11

II.      THE COURT HAS PERSONAL JURISDICTION OVER BONNER AND HIRSCH.............................................................................................12

       A.     Bonner Knowingly Conducted An Invalid Efficacy Test Of The Product And Published Its Findings On The Product's Packaging .....12

       B.     Hirsch Has Threatened Scientists and Consumers Who Have Spoken Out About The Product's Inefficacy .......................................14

       C.     Conspiracy Liability Covers Tortious Conduct, As Alleged Here .......17

III.     PLAINTIFF SUFFICIENTLY ALLEGES HIS CLAIMS AGAINST BONNER FOR VIOLATION OF NEW YORK GBL §§ 349 & 350 AND FRAUD .................................................................................................18

       A.     Plaintiff Alleges Bonner Engaged In Consumer-Oriented, Misleading Conduct ........................................................................18

       B.     Bonner's Arguments As To Fraud Are Without Merit .......................19

CONCLUSION.................................................................................................20

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca–Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) ............................................................5

*Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*,
  457 F. Supp. 3d 401 (S.D.N.Y. 2020)............................................................. 14, 16

*Aloudi v. Intramedic Research Grp., LLC*,
  729 F. App'x 514 (9th Cir. 2017).................................................................10

*Arlinghaus v. Ritenour*,
  622 F.2d 629 (2d Cir. 1980) .....................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................3

*Ball v. Metallurgie Hoboken–Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990)................................................................... 2, 3

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015)..................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................3

*Braynina v. TJX Companies, Inc.*,
  2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ..................................................16

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) ................................................................... 12, 13

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 Fed. Appx. 16 (2d Cir. 2015)........................................................... 3, 4, 5

*Contant v. Bank of Am. Corp.*,
  385 F. Supp. 3d 284 (S.D.N.Y. 2019)....................................................... 13, 14

*In the Matter of Cooga Mooga, Inc., et al.*,
  92 F.T.C. 310 (1978)..............................................................................16

*In the Matter of Cooga Mooga, Inc.*,
  98 F.T.C. 814 (1981)..............................................................................16

*Cresser v. American Tobacco Co.*,
  662 N.Y.S.2d 374 (1997) .........................................................................17

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) ................................................................2, 3

*Eades v. Kennedy, PC Law Offices*,
  799 F.3d 161 (2d Cir. 2015) ...................................................................2

*Ebin v. Kangadis Food Inc.*,
  2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .......................................20

*Eckler v. Wal-Mart Stores, Inc.*,
  2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ......................................9, 10

*Engel v. Novex Biotech LLC*,
  2015 WL 846777 (N.D. Cal. Feb. 25, 2015) .........................................10

*Gallagher v. Bayer AG*,
  2015 WL 4932292 (N.D. Cal. Aug. 18, 2015) .........................................6

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...............................................5, 10

*In re Clorox Consumer Litig.*,
  2012 WL 3642263 (N.D. Cal. Aug. 24, 2012) .......................................11

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .......................................14

*In re Gerber Probiotic Sales Practices Litig.*,
  2013 WL 4517994 (D.N.J. Aug. 23, 2013) .............................................5

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
  175 F. Supp. 2d 593 (S.D.N.Y. 2001) .............................................17, 18

*In re Platinum & Palladium Antitrust Litig.*,
  449 F. Supp. 3d 290 (S.D.N.Y. 2020) ..................................................12

*In the Matter of Cooper*,
  94 F.T.C. 674 (1979) ...........................................................................16

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998) ...................................................................3

*Jovel v. i-Health, Inc.*,
  2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ......................................10

*Kardovich v. Pfizer, Inc.*,
  97 F. Supp. 3d 131 (E.D.N.Y. 2015) ......................................................6

iii

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014)..............................................................19

*Kwan v. SanMedica Int'l, LLC*,
  2015 WL 848868 (N.D. Cal. Feb. 25, 2015)....................................................10

*Loreley Fin. (Jersey) No. 3 v. Wells Fargo*,
  Sec., 797 F.3d 160 (2d Cir. 2015)......................................................................3

*Pearson v. Target Corp.*,
  2012 WL 7761986 (N.D. Ill. Nov. 9, 2012)....................................................5, 9

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010)................................................................................2

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
  11 N.Y.3d 105 (2008) .....................................................................................16

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013).......................................................passim

*Ramson v. Layne*,
  668 F. Supp. 1162 (N.D. Ill. 1987) .................................................................16

*Rutkin v. Reinfeld*,
  229 F.2d 248 (2d Cir. 1956).............................................................................17

*Sabol v. Bayer Healthcare Pharm., Inc.*,
  439 F. Supp. 3d 131 (S.D.N.Y. 2020).............................................................9, 10

*Sackman v. Liggett*,
  965 F. Supp. 391 (E.D.N.Y.1997) ...............................................................17, 18

*Sawabeh Info. Servs. Co. v. Brody*,
  832 F. Supp. 2d 280 (S.D.N.Y. 2011)..............................................................20

*Sitt v. Nature's Bounty, Inc.*,
  2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) .......................................5, 6, 11, 19

*Spector v. Mondelez Int'l, Inc.*,
  2017 WL 4283711 (N.D. Ill. Sept. 27, 2017)...................................................10

*Tomasino v. Estee Lauder Companies Inc.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...............................................................11

*Tomasino v. Estee Lauder Companies, Inc.*,
  2015 WL 1470177 (E.D.N.Y. Mar. 31, 2015) ................................................4, 5

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
  729 F.3d 215 (2d Cir. 2013) ........................................................................2

*Tubbs v. AdvoCare Int'l, LP*,
  2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ..........................................10

*Vasic v. Patent Health, LLC.*,
  2014 WL 940323 (S.D. Cal. Mar. 10, 2014) ................................................5

*Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*,
  247 F. Supp. 2d 352 (S.D.N.Y. 2002) ........................................................16

*Wolo Mfg. Corp. v. ABC Corp.*,
  349 F. Supp. 176 (E.D.N.Y. 2018) .............................................................17

*Xcellence, Inc. v. Arkin Kaplan Rice LLP*,
  2011 WL 1002419 (S.D.N.Y. Mar. 15, 2011) ............................................20

*Yoder v. Orthomolecular Nutrition Institute, Inc.*,
  751 F.2d 555 (2d Cir. 1975) ........................................................................8

## STATUTES

New York General Business Law ("GBL") § 349 ................................... 6, 16, 17, 18

New York General Business Law ("GBL") § 350 ................................... 6, 16, 17, 18

## RULES

C.P.L.R. 302(a) ........................................................................................14

Fed. R. Civ. P. 12(b)(2) ..............................................................................2

Fed. R. Civ. P. 12(b)(6) ..............................................................................3

Fed. R. Civ. P. 15 .....................................................................................20

### INTRODUCTION

Defendants AC2T, Inc., Jeremy Hirsch (together, "Spartan") and Bonner Analytical Testing Co. (collectively, "Defendants") claim that the Spartan Mosquito Eradicator ("the Product") "eradicate[s] your mosquito population for up to 90 days," provides "do-it-yourself mosquito control," "[s]ignificantly decreases population within 15 days," and "[p]rovides up to 95% mosquito control for up to 90 days." Complaint ("Compl.") ¶¶ 2-3. ECF No. 1. Incredibly, the Product's sole active ingredients are sugar, salt, and yeast. *Id.* ¶ 7. Defendants claim the Product works as follows: "[t]he Spartan mosquito Eradicators contain sugar, salt, and yeast. When a mosquito ingests the Sodium Chloride (salt), its crystalline structure 'cuts' their stomach, causing it to rupture. The fermentation process also continues after mosquitoes ingest the mixture, and CO2 production in the mosquito also causes the stomach to rupture." Compl. ¶ 8.

But if Defendants' claim to have solved one of mankind's most vexing public health crises sounds too good to be true, that is because it is. As explained in the scientific sources quoted in Plaintiff's Complaint, sugar, salt, and yeast are all part of mosquitoes' regular diets. These ingredients do not kill mosquitoes, they nurture them. The Product is a complete scam.

To no surprise, independent research published in the Journal of the Florida Mosquito Control Association tested the Product and found that it did not work at all. *Id.* ¶¶ 5-6 (quoting the Aryaprema study). Faced with reputable scientific evidence, Spartan seeks to convert its motion to dismiss into a summary judgment motion, raising factual disagreements with the Aryaprema study's methodologies. *See, e.g.*, Spartan MTD at 7-10, 16-20. But the law is clear that such factual disagreements cannot be resolved on the pleadings. *See infra* § I.A. And while Spartan takes similar issue with Plaintiff's remaining cited scientific evidence, each show that consuming sugar, salt, or yeast is simply not lethal for mosquitoes. *See, e.g.*, Compl. ¶¶ 10-20.

1

For this reason, the Mosquito Illness Alliance lists the Product as a "Myth/Scam," and according to the Mosquito Illness Alliance, the Product's efficacy claims "have been debunked repeatedly by independent research." *Id.* ¶ 21. Thus, all of Plaintiff's citations to independent, scientific literature give rise to the plausible inference that sugar, salt, and yeast mixed with water cannot "eradicate" mosquitoes. Nothing more is required.

Bonner and Hirsch also raise jurisdictional arguments, as will be addressed below. However, AC2T, Inc. did not raise any jurisdictional arguments. Thus, AC2T's substantive arguments are the only ones potentially dispositive of the entire action. Accordingly, those will be addressed first in Section I, *infra*. All remaining arguments will be addressed in Sections II and III, *infra*. As set forth in detail below, Defendants' remaining arguments are without merit. The Court should deny Defendants' motions to dismiss in full.

## <u>LEGAL STANDARD</u>

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). The plaintiff's burden is governed by a "sliding scale," which "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Id.* at 85 (quoting *Ball*, 902 F.2d at 197); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (same). Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the trier,

2

would suffice to establish jurisdiction over the defendant." *Dorchester*, 722 F.3d at 84 (quoting *Ball*, 902 F.2d at 197); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.") (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). After discovery, the plaintiff's prima facie showing must be factually supported. *Dorchester*, 722 F.3d at 85 (quoting *Ball*, 902 F.2d at 197).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although "[d]etailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Naked assertion[s]" absent "further factual enhancement" are also inadequate in successfully stating a claim. *Id.* at 557. In addition, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court considering a motion to dismiss pursuant to Rule 12(b)(6) must take all of the factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678; *see Loreley Fin. (Jersey) No. 3 v. Wells Fargo Sec.*, 797 F.3d 160, 169 (2d Cir. 2015).

## ARGUMENT

### I.     PLAINTIFF PLAUSIBLY ALLEGES HIS CLAIMS

#### A.     The Weight Of Scientific Evidence Is Not Properly Considered At The Pleadings Stage

The thrust of Spartan's motion to dismiss is that the scientific evidence cited in Plaintiff's Complaint does not refute the Product's efficacy claims. *See* Spartan MTD at 17 ("Here, while the Complaint identifies a number of scientific sources, none of them provides substantive support to Plaintiff's allegations that the Product does not work as advertised."); *see also id.* at 18 ("None of the sources cited in the Complaint addresses whether the Product's combination of ingredients is effective in killing mosquitoes—let alone whether the Product itself is effective."); *id.* at 19 ("As a result, all of the scientific sources identified in the Complaint are insufficient as a matter of law to provide plausible support for Plaintiff's claims."). But as Judge Korman held in *Tomasino v. Estee Lauder Companies, Inc.*, 2015 WL 1470177 (E.D.N.Y. Mar. 31, 2015), plaintiff is "not obligated in her complaint to definitively prove all of her claims by reference to unassailable scientific fact. Rather, she is only required to state a claim that is plausible on its face." *Id.* at *5. Here, Plaintiff has done just that.

As an initial matter, Plaintiff's Complaint quotes a study which *did* examine the Product's efficacy and concluded the Product did not live up to its labeling claims. Compl. ¶¶ 5-6. It is directly on point. Unhappy with this, Spartan takes issue with the study's methodology, arguing that "the water temperature was wrong," or that "the tube placement was wrong." Spartan MTD at 18.[1] Spartan takes similar issue with Plaintiff's remaining cited studies. *See, e.g.*, Spartan MTD at 18 ("The Yee Paper, for example, is immaterial because it purports to have

---

[1] These arguments fail for the additional reason that the Aryaprema study stated the testing followed the Product's directions "as per the manufacturer's guidelines." *See* Boyle Decl., Ex. 3.

tested only two of the Product's four ingredients…"); *id.* at 19 ("[T]he Clements and Christophers Textbooks address mosquitoes' consumption of salt, but do not say anything about the toxicity of the salt solution in the Product when it is used as directed.").

But as courts have repeatedly held, these types of arguments are inappropriate for the pleadings stage. *See Sitt v. Nature's Bounty, Inc*., 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016) ("Nevertheless, courts agree that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss.") (internal citation omitted); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 461-62 (E.D.N.Y. 2013) ("In short, issues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."). Accordingly, "whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss." *Ackerman v. Coca–Cola Co.*, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010).[2] This case is no different. *See Tomasino*, 2015 WL 1470177, at *5 ("Defendants' arguments ultimately go to the weight that ought to be afforded the various contentions and studies on which plaintiff has relied in drafting her complaint. This is not the appropriate inquiry at this procedural stage."); *In re Gerber Probiotic Sales Practices Litig.*, 2013 WL 4517994, at *8 (D.N.J. Aug. 23, 2013)

---

[2] *See also Vasic v. Patent Health, LLC.*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) (holding that plaintiff's claims were facially plausible because of the scientific studies cited in support, and finding that "the issue of whether the proffered studies do in fact show that Defendants' representations are provably false is a question not properly decided on a motion to dismiss"); *Pearson v. Target Corp.*, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("[W]hether or not the proffered studies are applicable to Up & Up Triple Strength is a question of fact that I do not decide at this stage.").

("The parties dispute the reliability and findings of certain studies .... [T]he Court agrees ... that it is not appropriate to consider the content of the studies and resolve the factual issues at this stage of the litigation.").

Spartan relies heavily on *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131 (E.D.N.Y. 2015) to argue that there is a "stark disconnect" between Plaintiff's allegations and the studies he cites in support.  Spartan MTD at 20-21.  However, Spartan's exact argument was rejected by Judge Brodie in *Sitt v. Nature's Bounty*.  In *Sitt*, the "Defendants argue[d] that, as in *Kardovich*, there is a 'stark disconnect' between the studies and Plaintiff's allegations."  *Sitt*, 2016 WL 5372794, at *11.  But Judge Brodie soundly rejected this argument:

> [T]he Court finds *Kardovich* distinguishable.  In *Kardovich*, the district court found that the scientific studies pled as the basis for the claims included *no* findings relevant to the representations that were allegedly false.  Moreover, the *Kardovich* court expressly stated that it was able to reach that conclusion without considering 'issues of fact, credibility, and the weight of the evidence' because the plaintiffs' allegations were so conclusory and contradicted by the attached studies as to render the allegations implausible. … Thus, the studies cited by Plaintiff in the Complaint do not 'contradict' the allegations that the claims regarding the benefits of the Product are false, as the *Kardovich* court found of the studies before it, but rather merely identify the parties' factual disagreement about the reliability of competing research on black cohosh's benefits.

*Id.* at *11; *see also id.* ("The Court finds that Plaintiff's allegations that the Product cannot provide the health benefits represented by Defendants, and that scientific studies support that the Product does not provide the represented health benefits, are sufficient to plead the 'materially misleading' element of her claims under GBL sections 349 and 350.").  Here, unlike in *Kardovich*, there is no "disconnect" between Plaintiff's cited studies and his allegations. *Kardovich* is therefore inapposite.  *See Gallagher v. Bayer AG*, 2015 WL 4932292, at *6 (N.D. Cal. Aug. 18, 2015) (declining to dismiss California and New York statutory consumer claims

based on scientific studies and distinguishing *Kardovich* because it "relied on the extreme
'mismatch' between the plaintiff's claims and the studies cited in support").

### B.    Plaintiff's Cited Scientific Evidence Supports A Plausible Inference That The Product's Labeling Claims Are False

Spartan argues that Plaintiff's cited scientific evidence did not test the Product, but that is
not true.  Plaintiff alleges the Aryaprema study – a peer-reviewed article published in the Journal
of the Florida Mosquito Control Association – tested the Product and found that "the Spartan
Mosquito Eradicator is not effective" for its stated purpose.  Compl. ¶¶ 5-7.

Moreover, Plaintiff's remaining scientific sources, which show that the Product's
ingredients and purported mechanism of action cannot work as represented, lends further support
that Plaintiff's claims are plausible.  For context, Spartan claims that the Product works as
follows:

> "[t]he Spartan mosquito Eradicators contain sugar, salt, and yeast.
> When a mosquito ingests the Sodium Chloride (salt), its crystalline
> structure 'cuts' their stomach, causing it to rupture. The
> fermentation process also continues after mosquitoes ingest the
> mixture, and $CO_2$ production in the mosquito also causes the
> stomach to rupture."

Compl. ¶ 8.  But this theory has been debunked over and over.  Indeed, contrary to this
representation, "Scientists have repeatedly researched whether consuming salt can kill
mosquitoes.  It cannot."  *Id.* ¶ 10.  Instead, "rather than dying from the salt, mosquitoes' bodies
are able to eliminate it.  As a leading textbook explains: '[w]hen a female takes a blood meal,
excess salts (Na+, K+ and Cl-), which are absorbed across the stomach, are rapidly eliminated by
Malpighian Tubules/hindgut activity.'  In other words, mosquitoes simply urinate the salt out –
just like other animals."  *Id.* ¶ 11 (citing to Clements, A. N. 2000. The Biology of Mosquitoes.
CABI Publishing).

7

This principle is echoed by another peer-reviewed article selected for publication in the Journal of Insect Science, which states that "[b]ased on our data and coupled with the fact that mosquitoes have physiological and behavioral adaptations that allow them to avoid or process salt (as found in blood meals), we conclude that there is no scientific foundation for salt-based control methods of mosquitoes." Compl. ¶ 12 (citing to Exhibit A, Yee et al., salt feeding in mosquitoes); *see also id.* ¶ 17 (research showing that mosquitoes can detect salt content in food or liquid and will not consume either if too salty); *id.* ¶ 18 (citing to peer-reviewed research concluding that salt causes mosquitoes to drink *more* blood than they otherwise would).

Plaintiff's additional citations to scientific evidence show there is no truth to Spartan's claim that the Product's ingredients are lethal to mosquitoes because "[w]ild yeast is ubiquitous in nature and it causes fermentation of rotting (sugary) fruit, which is a preferred food for mosquitoes," and because "[w]ild yeasts are also regularly found in nectar, another preferred mosquito food." *Id.* ¶ 19 (citing to two peer-reviewed journal articles). It therefore comes as no surprise that the Mosquito Illness Alliance lists the Product as a "Myth/Scam" that has "been debunked repeatedly independent research." *Id.* ¶ 20. Against this backdrop, Spartan's argument holds no weight, especially given that the Court must read the Complaint as a whole and draw all reasonable inferences in Plaintiff's favor. *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 562 (2d Cir. 1975).

Even without the Aryaprema study, Plaintiff's citations to scientific evidence examining the inability of the Product's active ingredients to kill mosquitoes would still be sufficient to support Plaintiff's allegations. *See Quinn*, 958 F. Supp. 2d at 544 ("To support their claims, plaintiffs cite to numerous scientific studies that <u>arguably</u> support their conclusion that glucosamine and chondroitin products cannot reverse the deterioration of cartilage or cause it to

be rebuilt.  Therefore, plaintiffs have plausibly alleged that defendant's claim that the Glucosamine Supplements 'help rebuild cartilage' is false or deceptive…") (emphasis added); *see also id.* ("The Court finds unavailing defendant's contention that plaintiffs' claims should be dismissed because the studies plaintiffs cite do not, in fact, support the precise propositions for which they are cited.  Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."); *see also Pearson v. Target Corp.*, 2012 WL 7761986, at *2 (N.D. Ill. Aug. 7, 2012) ("[W]hether or not the proffered studies are applicable to [the supplement at issue] is a question of fact that I do not decide at this stage.  The fact that these studies looked at products that shared the same active ingredients ... makes Plaintiff's claim facially plausible.") (emphasis added).

For this reason, Spartan's reliance on *Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F. Supp. 3d 131 (S.D.N.Y. 2020) and *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) is misplaced.  For starters, *Sabol* had nothing to do with false advertising.  The plaintiff in *Sabol* brought failure to warn and negligence claims in connection with alleged medical injuries that resulted from a "contrast agent" that was "injected into the body before an MRI procedure to enhance the imaging."  *Sabol*, 439 F. Supp. 3d at 136.  Although the plaintiff claimed that defendants had notice of the contrast agent's potential for harm, this allegation was "directly contradict[ed]" by an FDA notice letter "attached to the Amended Complaint."  *Id.* at 148.  And the other studies cited in the plaintiff's complaint simply did not show that the contrast agent was harmful to patients under normal circumstances.  *Id.*  Similarly, in *Eckler*, "the studies on which Eckler relies didn't even test the actual formulation" of the product at issue.  *Eckler*,

2012 WL 5382218, at *6.  Thus, the scientific evidence offered by the plaintiffs in *Sabol* and *Eckler* was not relevant to the products at issue.

Here, to the contrary, the Aryaprema study tested the actual Product and its claims.[3] Compl. ¶¶ 5-6.  And Plaintiff's remaining scientific evidence examines the Product's active ingredients and shows why ingesting same is not lethal to mosquitoes, despite Spartan's claims otherwise.  *Id.* ¶¶ 10-21.  Accordingly, *Sabol* and *Eckler* do not alter the Court's analysis.  *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 461 (E.D.N.Y. 2013) ("This case is distinguishable from *Eckler,* in which plaintiff's proffered studies did not involve the disputed product, and moreover, targeted the narrower proposition that the contested product's main ingredient did not help with osteoarthritis (contrary to the product's representation that it helped target overall joint health), contributing to dismissal of plaintiffs' claims.  In contrast, here, plaintiffs' study involves Ester–C and specifically concerns Ester–C's vitamin C bioavailability qualities.").

### C.    Spartan's "Lack Of Substantiation" Argument Is Wrong

Spartan argues that "Plaintiff's allegations amount to nothing more than an assertion that Spartan's testing was inadequate and that the graph lacks substantiation."  Spartan MTD at 22.  That is wrong.  Instead, Plaintiff identifies specific labeling claims on the Product that are false according to scientific evidence.  Compl. ¶¶ 2-3.  Where, as here, Plaintiff has plausibly alleged that a defendant's marketing claims are false and misleading, this "lack of substantiation" argument fails.  *See Jovel v. i-Health, Inc.*, 2013 WL 5437065, at *8 (E.D.N.Y. Sept. 27, 2013)

---

[3] For this reason, Spartan's citations to cases where proffered studies did not test the product or labeling claims at issue are also inapplicable.  *See, e.g.*, *Aloudi v. Intramedic Research Grp., LLC*, 729 F. App'x 514 (9th Cir. 2017), *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017), *Spector v. Mondelez Int'l, Inc.*, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017); *Kwan v. SanMedica Int'l, LLC*, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015), *aff'd sub nom. Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017); *Engel v. Novex Biotech LLC*, 2015 WL 846777 (N.D. Cal. Feb. 25, 2015).

("Courts look to a plaintiff's complaint as a whole in determining whether a plaintiff has merely alleged a lack of substantiation claim.  <u>A claim can survive such a challenge by, for example, alleging that studies show defendant's statement to be false</u>.") (emphasis added); *Tomasino*, 44 F. Supp. 3d at 259 ("The plaintiff has not merely alleged a non-actionable 'lack of substantiation' claim premised on the allegation that Estee Lauder's advertising is deceptive because its statements are not substantiated by science.  Rather, she claims that Estee Lauder's 'efficacy claims' are affirmatively untrue."); *Quinn*, 958 F. Supp. at 544 ("plaintiffs allege the 'helps rebuild cartilage' statement is affirmatively false because, as a matter of scientific fact, it is impossible to rebuild cartilage.  Further, plaintiffs cite to clinical studies that allegedly support their allegation that the Glucosamine Supplements cannot 'help rebuild cartilage' under any circumstances.  Therefore, the Court does not construe plaintiffs' claims as based on a nonactionable, "lack of substantiation" theory.").[4]

### D.    Plaintiff Alleges That Spartan's Labeling Claims Are False Based On Independent Scientific Evidence – Not His Own Anecdotal Experience

Spartan argues that "Plaintiff's sparse anecdotal allegations do not plausibly plead that the Product's advertising is false."  Spartan MTD at 22.  But Plaintiff does not rely on his personal experience for this purpose.  Rather, Plaintiff relies on independent scientific evidence to allege falsity.  Compl. ¶¶ 5-21.  Nonetheless, Plaintiff's personal experience with the Product

---

[4] *See also Sitt v. Nature's Bounty, Inc*., 2016 WL 5372794, at *9, n.11 (E.D.N.Y. Sept. 26, 2016) ("Defendants argue that Plaintiff cannot merely allege that these representations are unsubstantiated by scientific support because claims for 'lack of substantiation' are not viable in New York.  Plaintiff has neither alleged nor argued that Defendants' claims about black cohosh's health effects are 'not substantiated' by science, but rather that these claims are 'affirmatively untrue.'  Because the Court finds that Plaintiff is not asserting a lack of substantiation claim, the Court does not determine whether such a claim is barred under New York law.'"); *In re Clorox Consumer Litig.*, 2012 WL 3642263, at *5 (N.D. Cal. Aug. 24, 2012) (denying defendant's motion to dismiss where plaintiffs alleged that two scientific studies directly contradicted defendant's advertising, holding "[a] claim can survive such a challenge by, for example, alleging that studies show defendant's statement to be false").

is relevant towards class certification factors such as commonality, typicality, and adequacy. Those will be litigated at the appropriate juncture.

## II.   THE COURT HAS PERSONAL JURISDICTION OVER BONNER AND HIRSCH

### A.   Bonner Knowingly Conducted An Invalid Efficacy Test Of The Product And Published Its Findings On The Product's Packaging

Bonner argues that the Court lacks personal jurisdiction over it because "Plaintiff does not and cannot allege that Bonner Analytical conducted any activity in New York."  Bonner MTD at 5.  That misses the mark.  The Court has "conspiracy jurisdiction" over Bonner.  "[T]he appropriate test for alleging a conspiracy theory of jurisdiction [is]: the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018); *see also In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 326 (S.D.N.Y. 2020) ("The Court observes that the *Schwab* standard for conspiracy jurisdiction is extraordinarily broad.  Indeed, under the *Schwab* standard, a court can exercise personal jurisdiction over a defendant based on the actions of a co-conspirator who is entirely unknown to that defendant.").

Here, Bonner ignores Plaintiff's allegation that Bonner – a company owned by Spartan's Vice President – conspired to dupe consumers into purchasing the Product by conducting a knowingly invalid test, the results of which were published on the Product's packaging.  *See* Boyle Decl., Exhibits 1A and 1B (displaying product packaging with Bonner's false test results). *See also* Compl. ¶¶ 25-26 ("The fraudulent scheme has also been advanced with cooperation from Bonner Analytical Testing Co., which is owned by Christopher Bonner, Spartan's Vice

President.  Defendants publish the findings of a purported test of the Product showing significant efficacy on the label.  They also regularly tout the results of this 'test' in the media.").

"But this 'test,' which was ran by Bonner Analytical, was scientifically invalid, as Defendants have been advised.  First, it was not even performed on the correct product.  This test was conducted on a former iteration of the Product which contained boric acid – an actual poison capable of killing mosquitoes.  Moreover, the test was (1) conducted without any scientific control and (2) was conducted in a location and during a period when the local government was already spraying insecticides meant to kill and reduce mosquito populations.  The fact that Defendants happened to purportedly observe a reduction in mosquito population was completely meaningless – this reduction was due to the spraying, not the Product."  Compl. ¶¶ 27-28. "Upon information and belief, nobody with scientifically legitimate qualifications participated in this 'testing.'  A qualified entomologist was invited to participate.  However, she declined to do so once she was presented with the nondisclosure agreement Defendants have repeatedly used to silence other scientists."  *Id.* ¶ 29.

Finally, the Product was sold to Plaintiff in New York – where the tort occurred.  Thus, AC2T's overt acts in furtherance of the conspiracy by distributing the Product for sale in New York was sufficient to confer specific personal jurisdiction its co-conspirators, including Bonner. Accordingly, Plaintiff has sufficiently alleged that a conspiracy existed, that Bonner participated in the conspiracy, Compl. ¶¶ 25-29, and that a co-conspirator (AC2T, Inc.) had sufficient contacts with New York when it overtly acted in furtherance of the conspiracy.  *Id.* ¶ 33.  That is sufficient.  *See Charles Schwab*, 883 F.3d at 87; *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 295 (S.D.N.Y. 2019) ("Likewise, HSBC and UBS AG could reasonably foresee being haled into court in New York for their conspiracy-related conduct.  The Complaint alleges that HSBC

13

executives encouraged FX traders in New York to execute front-running trades in anticipation of a client's market-moving transaction.  The Complaint also alleges that a UBS AG trader participated in a chat room with traders from Citigroup and JPMorgan in which a participant discussed coordinating trades with Citigroup's New York office."); *see also id.* at 292, n.2 (observing that "an out-of-state defendant can be subject to personal jurisdiction in New York [through conspiracy jurisdiction] ... when that defendant has knowledge of the New York acts of his co-conspirators"); *Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 408-409 (S.D.N.Y. 2020), *reconsideration denied*, 2020 WL 2538394 (S.D.N.Y. May 19, 2020) (noting that "[s]pecific jurisdiction may also exist where a defendant's connection to the forum state arises from participation in a conspiracy connected to the forum state by a co-conspirator's acts in furtherance of the conspiracy," and holding that "Plaintiffs have made a prima facie showing of specific jurisdiction over Standard Chartered, HSBC Bank, UBS AG, RBS and SocGen because the allegations in the Complaint give rise to the reasonable inference that they participated in the alleged conspiracy in the United States.").[5]

### B.   Hirsch Has Threatened Scientists and Consumers Who Have Spoken Out About The Product's Inefficacy

Spartan argues that the Complaint "fails to establish specific jurisdiction over Hirsch because there are no allegations that he transacted business in New York within the meaning of C.P.L.R. 302(a)" and that "Plaintiff has not pled *any* facts connecting Hirsch to New York." Spartan MTD at 14.  These arguments fail for the same reasons as explained above.  Just as with

---

[5] *See also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *4 (S.D.N.Y. Mar. 31, 2016) ("Plaintiffs have made a prima facie showing of specific jurisdiction over BTMU and Société Générale because the allegations in the SAC, together with evidence of the extent of these two Defendants' FX operations in the United States, give rise to the reasonable inference that they participated in the alleged conspiracy in the United States or participated elsewhere with the aim to cause harm in the United States.").

Bonner, the Court has "conspiracy jurisdiction" over Hirsch.  Here, Plaintiff alleges Defendants, including Hirsch, duped consumers into purchasing the Product by representing that: "[t]he Spartan mosquito Eradicators contain sugar, salt, and yeast.  When a mosquito ingests the Sodium Chloride (salt), its crystalline structure 'cuts' their stomach, causing it to rupture.  The fermentation process also continues after mosquitoes ingest the mixture, and CO2 production in the mosquito also causes the stomach to rupture."  Compl. ¶ 8.

Defendants make these representations even though "Defendants already know that the Product does not work.  They have repeatedly commissioned efficacy tests which found that Defendants' marketing claims were unsupported and that the Product did not work as advertised," yet "they have suppressed publication of these findings using nondisclosure agreements and threats to scientists involved in this research."  Compl. ¶ 22.  "These threats to scientists sounding the alarms on the Product's failure to work as advertised are key to furtherance of Defendants' fraudulent scheme.  Spartan's founder and spokesperson, Jeremy Hirsch, has made personal threats to at least one scientist involved in this research in order to intimidate him out of publicizing the results of his research.  *Id.* ¶ 23 (emphasis added).  Mr. Hirsch also left menacing communications to Colin Purrington, a biologist that has published results of his own investigation into the Products on the internet. After leaving a review of his findings of the Product's inefficacy on Amazon, Mr. Hirsch wrote a public response identifying Mr. Purrington's wife's place of employment."  *Id.* ¶ 24; *see also id.* ¶ 36 ("Mr. Hirsch acts as Spartan's spokesperson, regularly promoting the Product on television and other media.  He has also personally participated in the campaign of intimidation and concealment discussed above.").

Given Hirsch's overt acts in furtherance of the conspiracy and his knowledge of the actions of his co-conspirators— which ultimately caused Plaintiff to purchase the Product in the

state of New York— Plaintiff has made a prima facie showing of specific personal jurisdiction over Hirsch.  Nothing more is required at this stage.  *See Allianz Glob.*, 457 F. Supp. 3d at 408 ("Specific jurisdiction may also exist where a defendant's connection to the forum state arises from participation in a conspiracy connected to the forum state by a co-conspirator's acts in furtherance of the conspiracy.").

Jurisdiction over Hirsch may also be premised on endorser liability.  Indeed, GBL "Sections 349 and 350 comprise a 'mini' Federal Trade Commission ('FTC') Act, having been modeled on that analogous federal statute."  *Braynina v. TJX Companies, Inc.*, 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016); *accord Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 371 n.21 (S.D.N.Y. 2002) and *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 120 (2008).  In turn, under FTC guidelines, an endorser may be liable for deceptive or misleading endorsements made within a particular state.  *See Ramson v. Layne*, 668 F. Supp. 1162, 1165-66 (N.D. Ill. 1987) (using the FTC's Guidelines Concerning Use of Endorsements and Testimonials in Advertising (the "Guidelines") to determine the standards for endorser liability under the Illinois Consumer Fraud and Deceptive Business Practices Act); *Cooga Mooga, Inc.*, 92 F.T.C. 310 (1978), *modified* 98 F.T.C. 814 (1981) (holding actor and singer Pat Boone liable for misrepresentations made concerning an acne product); *see also In the Matter of Cooper* (1979) 94 F.T.C. 674 (holding astronaut Gordon Cooper liable for misstatements made about an automotive product).  Here, Plaintiff's Complaint alleges that Mr. Hirsch "acts as Spartan's spokesperson, regularly promoting the Product on television and other media."  Compl. ¶ 36.  As such, his conduct is actionable under the GBL, which provides this Court with an additional basis for personal jurisdiction over Hirsch.

Finally, although Spartan argues that *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 176 (E.D.N.Y. 2018) is "instructive," Spartan's reliance is misplaced.  First, in *Wolo*, the court held that "plaintiff's conclusory and vague allegations in the amended complaint, which generally refer to 'defendants' in the plural <u>and fail to describe Feldman's specific role, if any, in the alleged acts of which plaintiff complains</u>, are insufficient to demonstrate Feldman's personal involvement in any of the alleged misconduct."  *Id.* at 195 (emphasis added).  Here, to the contrary, Plaintiff's Complaint describes Hirsch's specific role as a spokesperson and alleges he has engaged in a campaign of intimidation and suppression against multiple scientists who spoke out against the Product's efficacy.  Compl. ¶¶ 2-24, 29.  Second, *Wolo* contains no analysis of conspiracy jurisdiction.  Accordingly, the holding of *Wolo* is of no importance here.

### C.    Conspiracy Liability Covers Tortious Conduct, As Alleged Here

To the extent Spartan argues on reply that there can be no conspiracy to violate GBL §§ 349 and 350, that would be incorrect.  Indeed, "[u]nder New York law, a defendant may be held liable in tort for conspiracy to do an unlawful thing, or to do a lawful thing in an unlawful manner."  *Arlinghaus v. Ritenour*, 622 F.2d 629 (2d Cir. 1980), cert. denied, 449 U.S. 1013 (1980) (internal quotation omitted); *accord In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 635 (S.D.N.Y. 2001).  "[A] claim for civil conspiracy is not an independent tort, but rather, a derivative claim of an underlying substantive tort."  *In re Methyl*, 175 F. Supp. 2d at 634; *see also Cresser v. American Tobacco Co.*, 174 Misc.2d 1, 662 N.Y.S.2d 374, 378 (1997) (same).  Thus, a claim for civil conspiracy is "merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible ... for <u>any</u> overt act or acts."  *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956) (emphasis added).  The purpose of civil conspiracy is to "establish[ ] joint liability by co-participants in a particular tortious conduct."  *Sackman v. Liggett*, 965 F. Supp. 391, 395 (E.D.N.Y.1997).

17

Notably, "Plaintiffs are not required to allege the specific facts surrounding the conspiracy at this stage of the litigation where the necessary information [may be] within the knowledge and control of the defendant [s]." *In re Methyl*, 175 F. Supp. 3d at 634; *see also id.* ("Thus, plaintiffs' allegations of an agreement or tacit understanding are sufficient to support their conspiracy claims and concerted action theory of liability."). Accordingly, Plaintiff's allegations that Bonner and Hirsch actively participated in the tortious conduct is sufficient for purposes of New York's GBL. *See, e.g.*, *Sackman v. Liggett*, 965 F. Supp. 391, 395-96 (E.D.N.Y.1997) (denying defendants' motion to dismiss a civil conspiracy claim where the plaintiff alleged a conspiracy to market a defective product); *In re Methyl*, 175 F. Supp. 2d at 634 ("a defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives ... is liable as a conspirator.").

## III.   PLAINTIFF SUFFICIENTLY ALLEGES HIS CLAIMS AGAINST BONNER FOR VIOLATION OF NEW YORK GBL §§ 349 & 350 AND FRAUD

### A.   Plaintiff Alleges Bonner Engaged In Consumer-Oriented, Misleading Conduct

Bonner argues that Plaintiff's GBL claims against it fail because "Plaintiff does not and cannot allege that Bonner Analytical engaged in any consumer-oriented conduct or advertising, much less any consumer-oriented conduct or advertising which was deceptive or misleading." Bonner MTD at 6. That is wrong. As stated above, Plaintiff alleges that Bonner knowingly published the results of the invalid efficacy testing that appears on every single unit sold of the Product. Compl. ¶¶ 25-26; Boyle Decl., Exhibits 1A and 1B. That constitutes consumer-oriented conduct. Moreover, Plaintiff explains these test results are misleading because: (1) it was not performed on the current product, (2) it was conducted without any scientific control, and (3) the test was conducted in a location and during a period when the local government was

18

already spraying insecticides meant to kill and reduce mosquito populations.  *Id.* ¶¶ 27-28.[6]  That is sufficient.

At minimum, whether Bonner's conduct is misleading is notoriously inappropriate for resolution on the pleadings.  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendants' motion to dismiss on this basis."); *Quinn*, 958 F. Supp. 2d at 543 ("[W]hether a particular act or practice is deceptive is usually a question of fact."); *Sitt*, 2016 WL 5372794, at *14 ("Whether a reasonable consumer could infer from Defendants' statement … that the Product also complies with USP specifications … is a question of fact that cannot be resolved on a motion to dismiss.").

## B.      Bonner's Arguments As To Fraud Are Without Merit

Bonner also argues that Plaintiff "impermissibly fails throughout the complaint to identify which defendants he alleges committed which acts."  Bonner MTD at 8.  That is wrong. Paragraphs 25 through 29 of Plaintiff's Complaint detail the specific acts committed by Bonner.

Next, Bonner asserts "the complaint nowhere alleges, nor could it, that Bonner Analytical made any statement at all to plaintiff or any other putative class member."  Bonner MTD at 8. To the contrary, however, Plaintiff alleges that Bonner published the results of its invalid testing on the Product's packaging.  Compl. ¶ 26.  Plaintiff further alleges that he "carefully read the Product's labeling," and Defendant's own declaration shows that the Bonner test results appear

---

[6] Given that Plaintiff alleges conduct specific to Bonner in detail, Bonner's argument that Plaintiff's allegations constitute "group pleading" has no merit.  Bonner MTD at 7.  Plaintiff's Complaint gives Bonner fair notice of the claims against it.

prominently on the Product's labeling.  *See* Boyle Decl., Exhibits 1A and 1B.  Against this backdrop, Bonner's argument makes no sense.

Finally, Bonner argues that Plaintiff does not "adequately plead that he suffered an injury" because he was required to allege "the price of comparable products."  Bonner MTD at 7-8.  But Plaintiff is not required to allege the price of comparable products.[7]  Instead, courts routinely hold that in the false advertising context, the "injury is the purchase price."  *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 62 (E.D.N.Y. 2015) (quoting *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013)).  Plaintiff alleges that he paid "approximately $25" for Defendants' ineffective Product, Compl. ¶ 33, and that he seeks damages in an amount to be proven at trial.  *Id.* ¶ 88.  That is sufficient.  *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 305 (S.D.N.Y. 2011) ("Although defendants argue that plaintiffs have failed to allege damages, '[r]ule 9(b) does not require that claimants plead injury with particularity in fraud claims.'  In fact, plaintiffs have alleged all that is required of them in this case—that they have suffered compensable damages in an amount to be proven at trial.") (quoting *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011)).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss in their entirety.  If the Court determines Plaintiff's allegations are deficient in any respect, Plaintiff respectfully requests leave to amend in accordance with the liberal pleading standards of Fed. R. Civ. P. 15.[8]

---

[7] In any event, Plaintiff can easily amend his complaint to include such allegations if the Court requires.

[8] Plaintiff will not pursue his claim for injunctive relief.

20

Dated: February 3, 2021

Respectfully submitted,

By:      /s/ Yitzchak Kopel
         Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  ykopel@bursor.com
         aleslie@bursor.com

*Attorneys for Plaintiff*

21