```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
KALMAN ROSENFELD, individually and                         :
on behalf of all others similarly situated,                :   No.: 1:20-cv-04662-RRM-PK
                                                           :
                    Plaintiff,                             :
                                                           :
            v.                                             :
                                                           :
AC2T, INC., BONNER ANALYTICAL                              :
TESTING CO., and JEREMY HIRSCH.                            :
                                                           :
                    Defendants.                            :
-----------------------------------------------------------x
```

# REPLY IN FURTHER SUPPORT OF MOTION BY
# AC2T, INC. AND JEREMY HIRSCH TO DISMISS COMPLAINT

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY 10020
Tel: (212) 808-5675

*Attorneys for Defendants AC2T, Inc.
and Jeremy Hirsch*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015)..................................................................................3

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012) ...............................................................................................2

*Chisolm-Mitchell v. Ahmed*,
  No. 20-cv-3434(PKC) (LB), 2021 WL 512460 (E.D.N.Y. Feb. 11, 2021) ..............................2

*In re Dental Supplies Antitrust Litig.*,
  No. 16-cv-696 (BMC) (GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017).........................3

*Eckler v. Wal-Mart Stores, Inc.*,
  No. 12-727, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012)................................................6, 7, 8

*Jones v. Bay Shore Union Free Sch. Dist.*,
  947 F. Supp. 2d 270 (E.D.N.Y. 2013) ................................................................................2

*Kardovich v. Pfizer, Inc.*,
  97 F. Supp. 3d 131 (E.D.N.Y. 2015) .......................................................................... *passim*

*Kwan v. SanMedica Int'l, LLC*,
  No. 14-cv-03287-MEJ, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015), *aff'd* 854
  F.3d 1088 (9th Cir. 2017) ..................................................................................................9

*Nelson v. MillerCoors*,
  LLC, 246 F. Supp. 3d 666 (E.D.N.Y. 2017)........................................................................5

*Pearson v. Target Corp.*,
  No. 11-cv-7972, 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) ..................................................9

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013).................................................................................9

*Relevant Sports, LLC v. U.S. Soccer Federation, Inc.*,
  No. 19-cv-8359 (VEC), 2020 WL 4194962 (S.D.N.Y. July 20, 2020) ......................................3

*Santiago v. Pressley*,
  No. 10-cv-4797 (PAE), 2011 WL 6748386 (S.D.N.Y. Dec. 23, 2011).....................................5

*Sitt v. Nature's Bounty, Inc.*,
  No. 15-cv-4199 (MKB), 2016 WL 5272794 (E.D.N.Y. Sept. 26, 2016) ..................................9

*Tomasino v. Estee Lauder Cos., Inc.*,
   No. 13-cv-4692 (ERK) (RML), 2015 WL 1470177 (E.D.N.Y. Mar. 26, 2015) ......................... 9

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................................................................. 3

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. NO THEORY SUPPORTS THE EXERCISE OF PERSONAL JURISDICTION OVER HIRSCH. ................................................................................................................. 2

    A.    Conspiracy Jurisdiction Fails Where, As Here, No Conspiracy is Alleged. ............ 2

    B.    The Theory of Endorser Liability Also Fails Because It Is Not Alleged That Hirsch Made Any Statements in New York. .......................................................... 4

II. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE PRODUCT'S ADVERTISING IS FALSE. ................................................................................................ 5

    A.    Plaintiff Has Failed to Show How Any of the Cited Authorities Demonstrate that the Product Does Not Work as Advertised. ............................... 5

    B.    Plaintiff's Efforts to Distinguish *Kardovich* and *Eckler* Are Unavailing. .............. 8

    C.    The Cases Cited by Plaintiff Are Inapposite Here. .................................................. 9

CONCLUSION ............................................................................................................................ 10

The Spartan Defendants respectfully submit this Reply in support of their Motion.[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition fails to overcome two problems that are fatal to his claims.

*First*, this Court lacks personal jurisdiction over Hirsch and he should be dismissed from this action. By its silence, the Opposition confirms there are no allegations that Hirsch personally engaged in any conduct in or affecting New York which could subject him to personal jurisdiction in this forum. Plaintiff's theory of jurisdiction hangs on assertions of "conspiracy jurisdiction" and "endorser liability," but the Complaint does not allege anything close to the facts necessary to support these theories. In fact, Plaintiff has not cited any case where "endorser liability" was applied to require an out-of-state individual to defend claims in a New York proceeding. In these circumstances, it would violate Hirsch's due process rights to require him to defend against Plaintiff's claims in New York federal court.

*Second*, none of the scientific sources cited in the Complaint says that the Product is ineffective when used as directed. The crux of the Opposition is that Plaintiff does not want the Court to look too closely at the scientific authorities cited in the Complaint. A close look is not needed to see that these authorities do not address the efficacy of the Product: Plaintiff is relying on a supposed test of the Product that did not follow the Product's directions, an assessment that does not claim to have tested the complete or accurate formulation of ingredients in the Product, and a collage of snippets from disparate scientific articles that do not address the Product or the efficacy of its formulation. For these reasons, the Complaint should be dismissed.

---

[1] For the Court's convenience, this Reply uses the same defined terms as the Memorandum of Law in Support of Motion by AC2T, Inc. and Jeremy Hirsch to Dismiss Complaint, dated January 6, 2021 (the "Moving Brief"). In addition, "Opposition" or "Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated February 3, 2021.

## ARGUMENT

**I.   NO THEORY SUPPORTS THE EXERCISE OF PERSONAL JURISDICTION OVER HIRSCH.**

Hirsch is a Mississippi resident. Plaintiff does not argue that any facts connect Hirsch to New York. Opp. at 14-16; Compl. ¶ 36. Instead, Plaintiff relies on two strained theories to try to extend New York's jurisdiction to Hirsch, neither of which has merit. Opp. at 14-16.

### A.  Conspiracy Jurisdiction Fails Where, As Here, No Conspiracy is Alleged.

Plaintiff argues that Hirsch is subject to suit in New York under a theory of "conspiracy jurisdiction," but there are no allegations of a conspiracy in the Complaint.

Plaintiff argues that the test for conspiracy jurisdiction is whether the Complaint alleges that (1) a conspiracy existed; (2) the defendant participated in the conspiracy and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state. Opp. at 12 (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir 2018)).

The Complaint does not meet this test. For starters, the Complaint fails to allege a conspiracy—the heart of the conspiracy jurisdiction test. Under New York law, a plaintiff alleging conspiracy must allege a primary tort and the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) the resulting damage or injury. *See*, *e.g.*, *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (citation omitted). The pleadings must present facts tending to show agreement and concerted action by the alleged co-conspirators. *See Chisolm-Mitchell v. Ahmed*, No. 20-cv-3434(PKC) (LB), 2021 WL 512460, at *2 (E.D.N.Y. Feb. 11, 2021). In assessing whether these pleading standards have been met, Plaintiff is not entitled to a liberal reading of the Complaint. *See generally Jones v. Bay Shore*

*Union Free Sch. Dist.*, 947 F. Supp. 2d 270, 278 (E.D.N.Y. 2013) ("Plaintiff is not *pro se*, and therefore not entitled to a liberal reading of the Complaint.").

The Complaint does not include a conspiracy claim. Nor are there any allegations of a conspiracy. The Complaint does not allege an illegal agreement between any of the defendants, nor concerted action together in furtherance of an illegal purpose. And finally, there is no allegation that any defendant's "overt acts in furtherance of the conspiracy" were connected to New York. The mere fact that the Product is sold in New York is hardly a basis to subject Hirsch (or for that matter, Bonner) to personal jurisdiction in New York.

In addition, given the absence of any relevant contacts between Hirsch and New York, the assertion of jurisdiction based on a "conspiracy theory" would violate his due process rights. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) ("A due process inquiry is always required."). Hirsch's alleged conduct related to the alleged "conspiracy" is not "such that he should reasonably anticipate being haled into court [in New York.]" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (BMC)(GRB), 2017 WL 4217115, at *3 (E.D.N.Y. Sept. 20, 2017). Hirsch has no physical or financial presence in New York, and AC2T has no New York-specific marketing plan or strategy. *See* Hirsch Decl. ¶ 6. The vague allegations of intimidation are not alleged to have occurred in New York or to have had an effect in New York. *See* Compl. ¶¶ 23-24; *see also* Opp. at 15. It would violate Hirsch's due process rights to require him to defend claims in this forum. *See, e.g.*, *Relevant Sports, LLC v. U.S. Soccer Federation, Inc.*, No. 19-cv-8359 (VEC), 2020 WL 4194962, at *7 n.12 (S.D.N.Y. July 20, 2020) (granting motion to dismiss in part, declining to extend conspiracy jurisdiction, and holding that such an exercise of jurisdiction would violate due process).

3

### B. The Theory of Endorser Liability Also Fails Because It Is Not Alleged That Hirsch Made Any Statements in New York.

Plaintiff also argues for jurisdiction over Hirsch based on a theory of "endorser liability". It does not appear that this theory has ever been applied in New York to subject an out-of-state defendant to jurisdiction: Plaintiff does not cite any such cases, and the Spartan Defendants are not aware of any.

This case does not present any reason to expand New York law. Plaintiff cites to FTC guidance regarding endorsers, but the Complaint does not even allege that Hirsch would meet the FTC standard. According to Plaintiff, that FTC guidance provides that "an endorser may be liable for deceptive or misleading endorsements *made within a particular state*." Opp. at 16 (emphasis added). Plaintiff alleges generally that Hirsch acted as spokesperson for the company, with no allegations that Hirsch made any statements in or affecting New York. *See id.*; see also Compl. ¶ 36. Plaintiff does not allege that he actually saw or heard any statements by Hirsch about the Product, let alone relied on them. Accordingly, even if the FTC's guidance on endorsers provided a basis for long-arm jurisdiction in New York, the Complaint does not allege sufficient facts to show that this theory could apply to Hirsch. Exercising personal jurisdiction over Hirsch in this action would be inappropriate and unlawful.

4

## II. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE PRODUCT'S ADVERTISING IS FALSE.

Turning to the merits, Plaintiff attempts to avoid dismissal of the Complaint by asking the Court not to look closely at any of the cited scientific authorities. But Plaintiff cannot plead claims alleging product inefficacy simply by citing to scientific sources. To support Plaintiff's claims, those sources would have to show on their face that the Product does not reduce mosquito populations when it is used as directed. *See* Moving Br. at 15-21. Plaintiff did not meet this obligation, and the Complaint should be dismissed.

Plaintiff does not contest that the Court may take judicial notice of the scientific sources cited in the Complaint. *See, e.g., Nelson v. MillerCoors,* LLC, 246 F. Supp. 3d 666, 672 (E.D.N.Y. 2017); *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 137 (E.D.N.Y. 2015). The Court should look at what those sources actually say, not how the Complaint characterizes them. *See Kardovich*, 97 F. Supp. 3d at 140 (citation omitted). Thus, the Complaint's conclusory allegations—such as "Scientists have repeatedly researched whether consuming salt can kill mosquitoes. It cannot." Compl. ¶ 10 (quoted in Opp. at 7)—may be disregarded for purposes of deciding this Motion. *See, e.g.*, *Santiago v. Pressley*, No. 10-cv-4797(PAE), 2011 WL 6748386, at *3 (S.D.N.Y. Dec. 23, 2011) (conclusory allegations are not entitled to weight under *Iqbal* and cannot be the basis of a plausible complaint surviving a motion to dismiss).

### A. Plaintiff Has Failed to Show How Any of the Cited Authorities Demonstrate that the Product Does Not Work as Advertised.

As the Moving Brief has established, the authorities cited by Plaintiff do not support Plaintiff's theory that the Product does not kill mosquitoes when used as directed: (1) the only source that purported to test the Product—the Aryaprema Study—states on its face that the testing deviated substantially from the Product's directions; (2) another source—the Yee Paper— does not purport to address the complete or accurate formulation of ingredients in the Product;

5

and (3) the remaining sources do not reference the Product or its combination of ingredients, and merely discuss a single ingredient in isolation. These allegations are so attenuated from the Product and how it actually works that they cannot plausibly support Plaintiff's core theory of inefficacy. *See Kardovich*, 97 F. Supp. 3d at 140.

The fact that the Aryaprema Study conducted a "test" of the Product is, by itself, not enough to show that Plaintiff's inefficacy claims are plausible. The Court should examine the Aryaprema Study to see whether, on its face, it used the Product in a manner consistent with the directions. Otherwise, a test that misuses the Product does not reveal anything about whether the Product works as advertised. *See Kardovich*, 97 F. Supp. 3d at 136 (noting that a court may use both its judicial experience and its common sense in determining whether a complaint states a plausible claim for relief).

The Moving Brief pointed out a number of ways that the testing methodology described in the Aryaprema Study deviated substantially from the Product's directions. *See* Moving Br. at 5-7. Plaintiff does not substantively respond to these arguments, and instead argues that the arguments should not be considered at the motion to dismiss stage because they go to the "weight" of the Aryaprema Study. Plaintiff is wrong.

The claims in this action are based on the theory that the Product does not kill mosquitoes when used as directed. How the Product performs when it is not used as directed is immaterial to Plaintiff's claims. *See Eckler v. Wal-Mart Stores, Inc.*, No. 12-727, 2012 WL 5382218, at *6 (S.D. Cal. Nov. 1, 2012). If Plaintiff intends to allege inefficacy by reliance on scientific testing, the tests have to use the Product as directed. Otherwise, the test results do not support Plaintiff's theory of inefficacy. The Spartan Defendants' arguments do not ask the Court to consider facts outside the Aryaprema Study concerning how the testing was conducted—those arguments

6

would be appropriate at the summary judgment stage, after fact discovery. Rather, the arguments on this motion to dismiss point out that the Aryaprema Study *on its face* purports to have tested the Product in ways that deviate from the Product's instructions. As a result, the reported test outcome is not a fact that plausibly supports Plaintiff's claims of inefficacy. This is the kind of inapt testing that was rejected in *Eckler*. 2012 WL 5382218, at *6. Indeed, if product inefficacy allegations could be established by testing that does not use the product as directed, then *Kardovich*, *Eckler*, and similar cases would be meaningless.

Plaintiff's arguments about the Yee Paper are also insufficient to support the claims in this action. The Yee Paper does not address the actual level of salinity in the Product. Instead, it purports to have tested the efficacy of salt-only and salt-and-sugar combinations to kill nine different mosquito species over a seven-day period. *See* Moving Br. at 7. *See also* Compl. Ex. A at 5. The Product states that results would be seen within *15 days*. Further, the Yee Paper reported that by the seventh (and final) day of testing, survival rates were already lower for at least two of the nine species of mosquitoes tested. Those results were observed even though the test was conducted in less than half the time specified by the Product.

Plaintiff's reliance on the scientific sources addressing particular ingredients in isolation is also inapt. *See* Opp. at 7-8. The Product does not represent that any of the individual ingredients is effective on its own. Some of the sources cited in the Complaint address salt— *e.g.,* that mosquitoes ingest food with certain levels of salt, have the biological ability to excrete some levels of salt, and will avoid ingesting food with certain higher concentrations of salt. *See* Compl. ¶¶ 10, 11, 17; Moving Br. at 8-9. None of those sources address whether the particular levels of salt in the Product, in combination with the other ingredients, is effective in killing mosquitoes. Nor do these sources address whether mosquitoes will consume the Product's actual

7

solution, and whether doing so kills those mosquitoes. Plaintiff's effort to stitch together snippets from different articles to create the impression of scientific support is the kind of "stark disconnect" that *Kardovich* warns against. *See* 97 F. Supp. 3d at 138.

### B. Plaintiff's Efforts to Distinguish *Kardovich* and *Eckler* Are Unavailing.

Plaintiff's attempts to distinguish *Kardovich* and *Eckler* are unavailing. In *Kardovich*, as here, the plaintiff brought causes of action asserting, among other things, false advertising and violations of New York General Business Law. 97 F. Supp. 3d at 134-35. This Court found that the *Kardovich* plaintiffs failed to plausibly allege any false statements or deceptive acts by Pfizer. *Id*. at 136. Central to this finding was the Court's determination that the scientific studies cited by plaintiff addressed different issues than those underlying the representations made by defendant with regard to the product's health benefits. *Id*. at 138 ("Simply put, these studies concerning specific medical conditions in no way correlate to, let alone contradict as plaintiffs allege, the unrelated claims made by Centrum about its health benefits."). *Kardovich* found there was a demonstrable "stark disconnect" between the cited sources and the packaging and instructions of the product at issue. *See Kardovich*, 97 F. Supp. 3d at 138.

In similar circumstances, *Eckler* warned against mismatched science that claims to debunk a product's efficacy. *See Eckler*, 2012 WL 5382218, at *7 ("When false advertising claims do survive a motion to dismiss, by contrast, there is not this kind of mismatch between the representations at issue and the evidence that allegedly debunks them.").

Thus, *Kardovich* and *Eckler* both support dismissal here, where Plaintiff has also cherry-picked snippets from various sources, without providing scientific data showing that the Product's overall formulation of ingredients is ineffective at reducing mosquito populations. *See* Moving Br. at 7-10; *see also Kardovich*, 97 F. Supp. 3d at 138.

### C. The Cases Cited by Plaintiff Are Inapposite Here.

Plaintiff's focus on the *Sitt*, *Tomasino*, *Quinn*, and *Pearson* decisions is not apt here, because the Spartan Defendants are not asking the Court to weigh scientific evidence. Rather, the Court needs only take notice that (a) the only Product testing alleged in the Complaint did not, on its face, follow the Product's directions, and (b) the remaining cited sources do not address the Product's formulation of ingredients or its efficacy. None of those decisions involved a purported scientific test that admitted it did not use the product in question in the manner directed. *Cf. Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199 (MKB), 2016 WL 5272794, at *11 (E.D.N.Y. Sept. 26, 2016) ("Thus, the studies cited by Plaintiff in the Complaint do not 'contradict' the allegations that the claims regarding the benefits of the Product are false, as the *Kardovich* court found of the studies before it, but rather merely identify the parties' factual disagreement about the reliability of competing research on black cohosh's benefits."); *Tomasino v. Estee Lauder Cos., Inc.*, No. 13-cv-4692 (ERK)(RML), 2015 WL 1470177, at *5 (E.D.N.Y. Mar. 26, 2015) ("Defendants' arguments ultimately go to the weight that ought to be afforded the various contentions and studies on which plaintiff has relied in drafting her complaint."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."); *Pearson v. Target Corp.*, No. 11-cv-7972, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("The fact that these studies looked at products that shared the same active ingredients…makes Plaintiff's claim facially plausible. That is where my inquiry ends for purposes of this motion.").

Here, there is nothing to weigh: Common sense dictates that, if a product test does not use the product in accord with its directions, it does not really test the product at all. *See Kardovich*, 97 F. Supp. 3d at 136.

Further, Plaintiff fails to distinguish his claims from claims based on lack of substantiation. The Complaint alleges in several places that the Spartan Defendants lack support for their claims that the Product kills mosquitoes. *See* Compl. at ¶¶ 9, 22. That theory cannot survive a motion to dismiss. *See, e.g.*, *Kwan v. SanMedica Int'l, LLC*, No. 14-cv-03287-MEJ, 2015 WL 848868, at *8 (N.D. Cal. Feb. 25, 2015), *aff'd* 854 F.3d 1088 (9th Cir. 2017).

## CONCLUSION

For the reasons stated above and in the Moving Brief, the Court should dismiss the Complaint with prejudice as against the Spartan Defendants.

Dated: New York, New York
February 24, 2021

        VENABLE LLP

        By: */s/ Edward P. Boyle*
            Edward P. Boyle
            Anna G. Dimon
        Rockefeller Center
        1270 Avenue of the Americas
        New York, NY 10020
        Tel: (212) 808-5675
        epboyle@venable.com
        agdimon@venable.com

        *Attorneys for Defendants AC2T, Inc.*
        *and Jeremy Hirsch*