UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALMAN ROSENFELD, individually and on behalf of all others similarly situated,<br><br>                            Plaintiff,<br>v.<br><br>AC2T, INC., BONNER ANALYTICAL TESTING CO., and JEREMY HIRSCH,<br><br>                            Defendants. | Case No. 1:20-cv-04662-RRM-PK<br><br>**STIPULATED ESI AND HARD COPY PROTOCOL** |

Plaintiff Kalman Rosenfeld ("Plaintiff") and Defendants AC2T, Inc., Bonner Analytical Testing Co., and Jeremy Hirsch ("Defendants") (collectively, the "Parties") agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to the agreed upon Protective Orders in this Action, this protocol governs all productions in this action. This protocol has the objective to facilitate the just, speedy, and inexpensive completion of discovery of ESI and hardcopy documents and to promote, whenever possible, the early resolution of disputes, including any disputes pertaining to scope or costs regarding the discovery of ESI without Court intervention. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules, to rely on any Protective Order entered in this action concerning protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol. The mere production of ESI as part of a mass production shall not itself constitute a waiver for any purpose.

A.     GENERAL AGREEMENTS

1.     Ongoing Cooperation among the Parties

The parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. The parties recognize that the failure of counsel or the parties to this action to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions. The parties agree that their counsel's zealous representation of them is not compromised by conducting discovery in a cooperative manner.

2.     Proportionality

a.     Reasonable Discovery Limits. The proportionality standard set forth in Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure ("FRCP")[1] shall apply to discovery in this action. Consistent with that proportionality standard, the parties agree to cooperate in identifying and agreeing to appropriate limits on discovery, including discoverable data sources, and relevant time periods.

b.     Discovery Concerning Preservation and Collection Efforts. Discovery concerning the preservation and collection efforts of another party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matters. If, based upon good faith, there is a dispute concerning the scope of a party's preservation or collection efforts, the Parties agree to meet and confer on the basis for such discovery, including the need for the requested discovery, relevance to claims or defenses of the action, proportionality of the proposed discovery, and the suitability of alternative means for obtaining the information.

---

[1] Unless otherwise indicated, all statutory references herein are to the FRCP.

  c. <u>On-Site Inspections of ESI</u>.  On-site inspections of ESI under Rule 34(b) shall be permitted only upon a good-faith showing by the requesting party of good cause and specific need or upon agreement of the parties.  As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions it may deem appropriate.

  d. <u>Non-Discoverable ESI</u>.  Consistent with the proportionality standard set forth in the FRCP, absent a party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

   i. ESI deleted in the normal course of business before the time a preservation obligation in this action came into effect;

   ii. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including, but not limited to, backup tapes, disks, SAN, and other forms of media that are substantially duplicative of data that are more accessible elsewhere;

   iii. Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

   iv. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

   v. On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

   vi. Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

    vii. Except as set forth below, electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that copies of all such electronic data are routinely saved elsewhere (such as on a server, laptop, desktop computer, or 'cloud' storage);

    viii. Voicemail, including Telephone or VOIP voice messages;

    ix. Text messages and instant messages located on mobile devices;

    x. SAS program and data files;

    xi. Server, system, network, or software application logs;

    xii. Data remaining from systems no longer in use that are unintelligible on the systems currently in use;

    xiii. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data are not ordinarily preserved as part of a laboratory report; and

    xiv. Structural files not material to individual file contents (e.g., .CCS, .XSL, .XML, .DTD, etc.).

  e. <u>Disaster-Recovery Backup Data</u>.  Consistent with the proportionality standard of the FRCP, absent a party's specific written notice for good cause, no party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.  Absent a showing of good cause, such backup media shall be considered to be not reasonably accessible.  Nothing in this provision obviates a party's duty to implement a litigation hold.

3. <u>No Designation of Discovery Requests</u>

Productions of hardcopy documents and ESI in the reasonably usable form set out in this protocol, including Attachment A, need not be organized and labeled to correspond to the categories in the requests.

4. <u>Inadvertent Production</u>

The parties agree to take reasonable steps to prevent inadvertent disclosure of any emails, ESI, or other material constituting or containing attorney-client privileged information or attorney work-product, or which constitutes or contains information protected by any applicable privacy law or regulation. Upon noticing the fact of an inadvertent disclosure, the Producing Party will promptly notify the Receiving Party. The Receiving Party will promptly return, sequester or destroy all copies of the specified information, consistent with the provisions contained in the Protective Order entered in this action.

**B.     ELECTRONICALLY STORED INFORMATION**

1. <u>Production in Reasonably Usable Form</u>

   a.     The parties shall produce ESI in reasonably usable form. Except as stated in paragraphs B.2 and B.3 below or as agreed hereafter by the parties, such reasonably usable form shall be the single-page TIFF-image format with extracted or OCR text and associated metadata as set out in Attachment A, which is incorporated in full into this protocol. If the receiving party for good cause explained in the request seeks production in native format of specifically identified ESI produced originally in TIFF-image form, the producing party shall respond reasonably and in good faith to any such request.

   b.     <u>Redactions</u>. The Producing Party may redact from any Group IV TIFF image, metadata field, or native file, material (i) that is protected from disclosure by applicable privilege

or immunity, (ii) governed by applicable privacy law or regulation, or (iii) that the Protective Order entered in this Action allows to be redacted.

  c. Each party may make requests for good cause seeking production of specifically identified documents in color.

2. <u>Electronic Spreadsheets, Presentations, Desktop Databases, and Multimedia Files</u>

  Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access), Microsoft OneNote files, and audio/video multimedia files that have been identified as responsive shall be produced in native format, unless they are authorized to be redacted in accordance with Paragraph 1.b above. After such redactions, the producing party either shall produce the redacted file in the reasonably usable form set out in Attachment A or shall produce the redacted copy in native format.

3. <u>Enterprise Databases and Database Management Systems</u>

  In instances in which discoverable ESI in an enterprise database or database management system (e.g., Oracle, SQL server, DB2) can be produced in an already existing and reasonably available report, the parties shall collect and produce, in the reasonably usable TIFF-image form described in Attachment A, the discoverable material in that report format. If an existing report form is not reasonably available, the parties shall export from the original database discoverable information in a format compatible with Microsoft Excel or Microsoft Access, and the information shall be produced in that native format.

4. <u>Additional Procedures for Native Format Files</u>

  a. Procedures for assigning production numbers and confidentiality information to files produced in native format are addressed in Appendix A, incorporated herein, at Paragraph A.16.

      b.     Any party seeking to use, in any proceeding in this action, files produced in native format shall do so subject to the following:

           i.     If the native file has been converted to TIFF-image or hardcopy, the original production number and confidentiality designation shall be stamped on each page of the resulting TIFF-image or hardcopy document representing the original native-format file, with a suffix added to the production number to identify the particular page in the file (e.g., XYZ00001_001). In addition, the MD5 or SHA-1 hash value of the native file from which the TIFF-image or hardcopy document was generated shall be placed on the first page of the TIFF-image or hardcopy document;

           ii.     If the file will be used in its native format, the party seeking to use the native file shall first provide to other parties, sufficiently in advance of such use that the producing party can confirm that the file to be used is the same as the file produced, both the production number and the MD5 or SHA-1 hash value of the file; and

           iii.     Use of a file in native format, or use of a TIFF-image or hardcopy document representing the original native-format file shall constitute a representation that the file being used is an accurate and complete depiction of the original native-format file.

5.     Use of Search Filters

     a.     To contain costs associated with the identification of relevant ESI for review and production, the parties shall meet and confer to discuss either the use of reasonable search terms, file types, and date ranges, or the use of advanced search and retrieval technologies, including

predictive coding or other technology-assisted review.  The parties agree to meet and confer in good faith to reach agreement on a list of search terms and protocols for the production of ESI. During such discussions, the producing party shall retain the sole right and responsibility to manage and control searches of its data files.  If the producing party makes revisions to search terms or advanced technology procedures in order to make them more accurate and cost-effective, the producing party agrees to meet and confer with the requesting party regarding such revisions.  A party's failure to meet and confer or to make a timely request for different or additional searches as described in this paragraph shall waive that party's right to object to the sufficiency of the searches actually conducted.

        b.      The Parties agree that a "hit" on a search term or the fact that any electronic file has been identified in agreed-upon searches is not the sole factor in determining whether ESI is responsive to a Party's request for production.  For the avoidance of any doubt, the producing party is not required to produce ESI containing a "hit" or search term if the document is not otherwise responsive, is protected from disclosure by applicable privilege or immunity, governed by any applicable privacy laws or regulations, or that the Protective Order entered in this Action allows to be withheld.

        c.      Nothing in this section shall limit a party's right to seek reasonable agreement from the other parties or a Court ruling to modify previously agreed-upon search terms or procedures for advanced search and retrieval technologies.

        d.      The receiving party shall propose an initial list of search terms to the requesting party.  The parties agree to meet and confer in good faith to finalize a list of acceptable search terms.  The parties agree that they may request subsequent search terms for good cause shown.

Should the parties be unable to resolve any disputes cooperatively, they shall promptly bring their unresolved dispute(s) to the Court's attention.

6. <u>Email Threading</u>

    a.     Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The parties agree that removal of wholly-included, prior-in-time, or lesser-included versions from potential production will reduce all parties' costs of document review, production, and litigation-support hosting. Accordingly, each party may produce or list on any required privilege log only the most inclusive email threads.

    b.     Following production of the most inclusive email threads, and for good cause, a receiving party may make reasonable requests, with respect to most-inclusive email threads particularly identified in the requests, for metadata associated with individual prior or lesser-included emails within the identified most inclusive email threads. Upon such request, the producing party shall cooperate reasonably in responding to any such requests.

7. <u>Avoidance of Duplicate Production</u>

    a.     "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The producing party need produce only a single copy of responsive Duplicate ESI. A producing party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same

Duplicate ESI exists in the files of multiple custodians, those persons shall be listed in the Custodian field identified in Paragraph A.15(c) of Attachment A.

  b. Parties also may de-duplicate stand-alone documents or entire document families using near-duplicate identification technology. Parties are not required to use near-de-duplication protocols, but, if they choose to do so, the Producing Party shall disclose to the Receiving Party the near-de-duplication protocol intended to be used prior to employing such protocol.

  c. Within three days of being notified of the near-de-duplication protocol a Producing Party wishes to use, a Receiving Party shall have the right to object to the use of such protocol. If no objection is made, the Producing Party is free to use the near-de-duplication protocol proposed.

**C. DOCUMENTS THAT EXIST ONLY IN HARDCOPY (PAPER) FORM**

  A party may produce documents that exist in the normal course of business only in hardcopy form either (a) in their original hardcopy form, or (b) scanned and produced, with Bates numbers added and redacted as necessary in accordance with the procedures set out in Attachment A. Except as set out in section A.4 above, the scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI.

  The Parties will produce paper documents according to the following protocol:

  1. Except as provided in Section C.2, all paper documents shall be produced as Group IV TIFF images with related Optical Character Recognition ("OCR") text files and a cross-referenced load file, according to the specifications set forth in Appendix A.

  2. The Parties reserve the right to make responsive hard copy documents available for inspection pursuant to Federal Rule of Civil Produce 34.

**D.      CONFIDENTIALITY**

The Parties incorporate the provisions of any discovery confidentiality order and/or protective order concerning protection of confidential or otherwise sensitive information that may be agreed to by the Parties and/or entered by the Court.  For the avoidance of doubt, nothing in this Stipulation shall supersede or alter any discovery confidentiality agreement and/or protective order concerning protection of confidential or otherwise sensitive information that may be entered by the Court.

**E.      CLAIMS OF PRIVILEGE**

Except as provided herein, the Parties will comply with rules and principals related to privilege logs as set forth in Fed. R. Civ. P. 26(b)(5) and Local Rule 26.2.

**F.      ORIGINAL DOCUMENTS**

The Parties will retain the original hard-copy and ESI documents.  Subject to preservation of appropriate privileges and other protections, the Parties will consider reasonable requests, after any necessary meet and confer, to produce the original copy and ESI documents of specific documents or groups of documents, or where a document existed originally in only hard-copy format, make originals of any produced document available for inspection by the requesting Party in the form in which such documents are kept in the ordinary course of business.

| | |
|---|---|
| Dated:  April 23, 2021 | **BURSOR & FISHER, P.A.**<br><br>By: */s/  Yitzchak Kopel*<br>      Yitzchak Kopel<br><br>Yitzchak Kopel<br>Alec M. Leslie<br>888 Seventh Avenue<br>New York, NY  10019<br>Telephone: (646) 837-7150<br>Facsimile:  (212) 989-9163<br>Email: ykopel@bursor.com<br><br>*Counsel for Plaintiff* |
| Dated:  April 23, 2021 | **KASOWITZ BENSON TORRES LLP**<br><br>By: */s/ Rachel M. Bandli*<br>      Rachel Bandli<br><br>Daniel R. Benson<br>Rachel M. Bandli<br>1633 Broadway<br>New York, NY 10019<br>Phone: (212) 506-1700<br>Fax: (212) 506-1800<br><br>*Counsel for Defendant Bonner Analytical Testing Co.* |

Dated: April 23, 2021                      **VENABLE LLP**

By: */s/ Anna G. Dimon*
     Anna G. Dimon

Edward P. Boyle
Anna G. Dimon
Rockefeller Center
1270 Avenue of the Americas
New York, NY 10020
Tel: (212) 808-5675
epboyle@venable.com

*Counsel for Defendants AC2T, Inc. and Jeremy Hirsch*

**IT IS SO ORDERED.**

DATED:_____

                                              By:_____
                                              Hon. Peggy Kuo
                                              U.S. MAGISTRATE JUDGE

## ATTACHMENT A

A1.  <u>Image Files</u>.  Files produced in *.tif format will be single page black and white *.tif images at 300 DPI, Group IV compression.  To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape).  Each *.tif image will be assigned a unique name matching the production number of the corresponding page.  Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders.  Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

    a.    be consistent across the production;

    b.    contain no special characters; and

    c.    be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8 digit number (e.g. ABC00000001).  The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.  Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A2.  <u>File Text</u>.  Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (i.e., not one *.txt file per *.tif image).  Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file

named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file. The text file shall include interlineated image keys/bates numbers sufficient to show, for all TIFF-image pages, the bates-numbered page of the associated text.

      A3.    <u>Word Processing Files</u>. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes, comments, and hidden text showing.

      A4.    <u>Presentation Files</u>. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

      A5.    <u>Spreadsheet or Worksheet Files</u>. To the extent that spreadsheet files, including, without limitation, Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

      A6.    <u>Parent-Child Relationships</u>. Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.15 below.

      A7.    <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

      A8.    <u>English Language</u>. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the producing party shall not have an obligation to produce an English translation of the data.

A9.  **Embedded Objects**.  Some Microsoft Office and .RTF files may contain embedded objects.  Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF.  Objects with those identified file types shall not be extracted as separate files and produced as attachments to the file in which they were embedded.  Following production of documents containing embedded objects, the Parties may meet and confer on reasonable requests to produce certain embedded objects on a file by file basis.

A10.  **Compressed Files**.  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A11.  **Encrypted Files**.  The producing party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

A12.  **Fixed Notes**.  For documents that contain fixed notes (*e.g.*, "post-it notes"), the pages will be scanned or converted both with and without notes and those pages will be treated as part of the same document.  If the burden on the Producing Party associated with production of documents with fixed notes becomes unreasonable, the Parties agree to meet and confer on the requirements of this subparagraph.

A13.  **Scanned Hardcopy Documents**

a.  In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).

b.  OCR for scanned images of hard copy documents should be performed on a document level and provided in document-level *.txt files named to match the production number

16

of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

  c. In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

  A14. <u>Production Numbering</u>. In following the requirements of Paragraph A.1, the producing party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

  A15. <u>Data and Image Load Files</u>.

  a. Load Files Required. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

  b. Load File Formats.

   i. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

   ii. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c. Fields to be Included in Data Load File. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client or work-product privilege, or otherwise prohibited from disclosure by law or regulation, including any applicable privacy regulation or law, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| PRODCOUNTATT | 2 | Yes | Yes | The number of attachments associated with a family |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |

| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
|---|---|---|---|---|
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| HASHVALUE | `e4d909c290d0fb1ca068ffaddf22cbd0` | No | Yes | MD5 or SHA-1 hash value |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| REDACTED |  | Yes | Yes |  |

A16.  <u>Files Produced in Native Format</u>.  Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_[Original File Name]_Confidential." For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively".  To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text

contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

  A17. <u>Production Media</u>.  Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.).  Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.

  A18. <u>Encryption of Production Media</u>.  To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing party.  In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.